### WILLIE KEARNEY v. GLADYS AYCOCK HARE.

(Filed 10 November, 1965.)

**1. Landlord and Tenant § 11—**

Where a tenant for a fixed term of one year or more holds over after the expiration of the term, the lessor may eject him or recognize him as a

tenant; if lessor continues to recognize him as a tenant, a tenancy from year to year, under the same terms as those of the former lease, insofar as they are applicable, is created by presumption of law in the absence of a new contract or circumstances rebutting such presumption.

**2. Landlord and Tenant § 10—**

If a lease for a term of a year provides for renewal upon 30 days notice prior to the expiration of the term, a holding over by the tenant after term without giving notice does not constitute a renewal or extension under the terms of the lease, and the acceptance of rent in the former amount by the lessor after expiration of the term does not waive his right to notice.

**3. Same—**

This lease for a period of a year provided for extensions from year to year successively for a period of four years upon notice 30 days prior to the expiration of the current term. At the request of lessor, the tenant paid rent for the entire second year in installments beginning some two months prior to the expiration of the term. *Held:* By requesting and accepting payment of rent prior to the time lessee was required to give notice, the lessor waived notice, and the extension was effected under the lease, giving lessee the right to extend the lease for each successive year for the remainder of the four-year period upon payment of rent and the giving of due notice.

**4. Same—**

Provisions of a lease relating to renewals and extensions will be construed in favor of the tenant.

APPEAL by defendant from *Mintz, J.,* March 1965 Civil Session of WAYNE.

This is a controversy without action submitted to the court upon stipulated facts.

The defendant, as lessor, and the plaintiff, as lessee, entered into a written lease of a tract of land in Wayne County dated 15 November 1962 and recorded 2 July 1964. The lease provided:

"(1) This lease shall begin as of the date hereof and, unless sooner terminated shall exist and continue until the 15th day of November 1963.

"(2) As rental, the party of the second part is to pay $1,000.00 per year; but * * * should the tobacco allotment be cut to less than three acres then the party of the second part will pay $900.00 per year * * *.

"(4) Provided all rents have been paid * * * the party of the second part may at his option extend this lease for an additional term of one year, by giving to the party of the first part written notice of his intention to do so not later than thirty (30) days preceding the termination of this lease; and in the event of such extension all of the terms and conditions as herein set out shall continue in full force and effect, to include the term and condition of extend-

ing this lease from year to year, but under no circumstances can this lease be extended more than four times."

Prior to the date of the lease, the lessor had instituted a special proceeding against the owner of a contingent remainder in the land to have the land sold for division. Commissioners were appointed to make such sale and advertised the land for sale. The lessee did not know of the proceeding until 1 July 1964, more than seven months after the expiration of the original term of the lease, when he saw the commissioners' notice of sale. He was then in possession of the land and had already paid the entire agreed rent for the second year ending 15 November 1964. He promptly notified the commissioners that he claimed a lease upon the land which was valid for the crop years 1965, 1966 and 1967; that is, he contends he had a lease for the year ending 15 November 1964 with the right to extend it, year by year, for three additional years. The lessor-defendant contends the lessee-plaintiff had no right to so extend the lease.

In order to avoid a controversy which might depress the bidding at the sale, the parties agreed that the commissioners would sell the land free and clear of the plaintiff-lessee's claim and retain from the proceeds $2,400, the agreed value of his claim if it be valid, that this proceeding would be brought to determine the validity of the claim and that the $2,400 would be paid over to the plaintiff if his claim should be adjudged valid, but otherwise would be paid to the owners of the land.

Except as indicated in the provision for extension, the lease does not contain any provision as to when the rent is to be paid. The rent was paid for the year ending 15 November 1963, and for the year ending 15 November 1964, at the request of the lessor-defendant, it was paid in the following manner:

On 22 May 1963 the lessor and the lessee co-signed a note to the Branch Banking & Trust Company for $500, all of the proceeds of which were then received by the lessor. The lessee paid the note 1 November 1963. He paid an additional $100 to the lessor by check on 30 August 1963 and paid the final $300 to her by check on 9 December 1963, the total rent for the year having been reduced to $900 as provided in the lease.

The lessee gave the lessor no written notice of his intent to extend the lease to 15 November 1964 unless such notice was given by the signing and delivery of the above mentioned note and checks for the rent for such year, the note and checks not being set forth in the record.

The superior court concluded as a matter of law, upon the stipu-

lated facts, that the plaintiff had the right so to extend the lease and, therefore, was entitled to the $2,400 retained by the commissioners from the proceeds of their sale of the land. It entered judgment accordingly and from such judgment the lessor-defendant appeals.

*Sasser & Duke by John E. Duke and J. Thomas Brown, Jr.; Langston & Langston by W. Dortch Langston, Jr., for defendant appellant.*

*Dees, Dees & Smith by William L. Powell, Jr., for plaintiff appellee.*

LAKE, J. It is the contention of the lessor-defendant that by holding over after the expiration of the original one year term on 15 November 1963, even though the rent for the full second year was paid on or before 9 December 1963, the lessee-plaintiff had only a tenancy from year to year, with no right of extension beyond 15 November 1964, other than that which is inherent in a tenancy from year to year, because he did not give to the lessor-defendant, at least thirty days prior to the expiration of the original term, written notice of his intent to extend the lease to a second year.

In the absence of a provision in the lease for an extension of the term, when a tenant under a lease for a fixed term of one year, or more, holds over after the end of the term the lessor may eject him or recognize him as a tenant. *Murrill v. Palmer,* 164 N.C. 50, 80 S.E. 55. If the lessor elects to treat him as a tenant, a new tenancy relationship is created as of the end of the former term. This is, by presumption of law, a tenancy from year to year, the terms of which are the same as those of the former lease in so far as they are applicable, in the absence of a new contract between them or of other circumstances rebutting such presumption. *Williams v. King,* 247 N.C. 581, 101 S.E. 2d 308; *Murrill v. Palmer, supra; Holton v. Andrews,* 151 N.C. 340, 66 S.E. 212; *Harty v. Harris,* 120 N.C. 408, 27 S.E. 90. Such a tenancy may be terminated by either party at the end of any year thereof by giving notice of his intent so to terminate it thirty days before the end of such year. G.S. 42-14.

On the other hand, where the lease provides that the tenant may, at his option, extend the term without requiring him to give notice of such intent, if the tenant holds over after the end of the original term and pays rent as provided in the lease, the presumption is that the option to extend the term of the lease has been exercised and the tenancy continues to be that created by the lease, the rights conferred by it continuing into the extended term. *Trust Co. v. Frazelle,* 226 N.C. 724, 40 S.E. 2d 367. That is, the existence of the right to

extend the term is a circumstance which rebuts the presumption of a tenancy from year to year.

When the lease provides that the tenant may extend its term by giving notice of such intent in a specified manner or by a specified time, or both, the giving of such notice is a condition precedent to the extension of the term and if it is not so given by the specified time the right to extend the term is cut off and cannot be revived by the unilateral act of the tenant. *Realty Co. v. Demetrelis,* 213 N.C. 52, 194 S.E. 897; *Oil Co. v. Mecklenburg County,* 212 N.C. 642, 194 S.E. 114. A holding over by him, without having given the required notice, nothing else appearing, has the same effect as if the lease had contained no provision for an extension of the term. *Duke v. Davenport,* 240 N.C. 652, 83 S.E. 2d 668. The provision for notice of intent to extend the term being for the benefit of the lessor, he can waive notice. See: *Oil Co. v. Mecklenburg County, supra; Holton v. Andrews, supra.* However, his mere acceptance of rent subsequent to the expiration of the original term, even though at the same rate as provided in the lease, is not such a waiver. *Realty Co. v. Demetrelis, supra.*

Except as otherwise provided in the lease, the notice is not required to be in any particular form, it being sufficient that it shows a definite determination of the tenant to exercise his option to extend the term. *Orr v. Doubleday, Page & Co.,* 223 N.Y. 334, 119 N.E. 552; Anno: 1 A.L.R. 343; 32 Am. Jur., Landlord and Tenant, § 979; 51 C.J.S., Landlord and Tenant, § 62C(2). In construing provisions of the lease relating to renewals and extensions the tenant is favored. *Trust Co. v. Frazelle, supra.*

In the present case the lease provides that the tenant may extend the term of the lease by giving the lessor "written notice of his intention to do so not later than thirty (30) days preceding the termination of this lease." We are brought, therefore, to the questions of whether he gave such notice and, if not, whether the lessor waived it.

It is stipulated that not only was the rent for the first year, 1963, paid, but "at the request of the lessor" the rent for the entire second year, 1964, was paid in the summer and fall of 1963, the final payment being on 9 December 1963. As early as 22 May 1963, at the lessor's request, the tenant and the lessor together signed a note to the Branch Banking & Trust Company for $500, all of the proceeds of which went to the lessor and which was paid in full by the tenant 1 November 1963 "out of the rents which otherwise would have been paid to the lessor for the crop year 1964." There being nothing to indicate the contrary, it must be inferred that this was the agreement of the parties when the note was made in May. Again, on 30 August

1963, three and a half months before the original term of the lease expired, the tenant "at the request of the lessor" gave the lessor his check for $100 as a payment on the rent for the second year, 1964. The check was a written instrument. Under the circumstances, it could not have been understood by the parties otherwise than as a definite declaration by the tenant of his intent to occupy the land for the following year, which he had the right to do by extending the term of the lease.

Even if the check be not regarded as a notice in writing of the tenant's "intention" to extend the term of the lease, we think the facts stipulated show clearly a waiver of further notice by the lessor. See, 32 Am. Jur., Landlord and Tenant, § 980. This is not the case of a landowner accepting a payment for the use of his land after the original term has expired and when the tenant has already lost his right to extend the lease and the lessor has acquired a right to be paid for the use of the land during the holding over. Here, the lessor requested the tenant to pay the second year's rent before the lessor was entitled thereto and while the tenant still had the right to give the notice specified in the lease. By requesting and accepting payment of rent for the second year under those circumstances, the lessor lulled the tenant into the belief that the extension of the term through the second year was an accomplished fact and so cannot, after the expiration of the time for giving notice, be heard to say that this condition precedent to extension has not been met.

The lease was extended to 15 November 1964 by this conduct of the parties and the extension carried with it the right to renew, year by year, for 1965, 1966 and 1967, by giving for each year the specified notice. Having that right at the time of the agreement of 30 July 1964 concerning the sale and retention by the commissioners of the $2,400, the plaintiff-lessee is entitled to have those retained funds paid to him.

Affirmed.