SPRUCE PINE INDUSTRIAL PARK, INC., Plaintiff v. EXPLOSIVES SUPPLY COMPANY INC., OKALENE (also known as "Oakalene" or "Oaklene") VANCE and JOHN VANCE, Defendants

No. COA05-701

(Filed 19 September 2006)

**Landlord and Tenant— leasehold interest—holdover tenant— waiver of notice requirement**

The trial court did not err by granting directed verdict against plaintiff lessor and by declaring that defendant lessees are the owners of the leasehold interest in Tract 1 thus allowing defendants to remain in full possession of Tract 1 through and including 7 March 2011 provided they continue to tender rent each month in the amount of $75 or annual rent in the amount of $900, because: (1) plaintiff's reliance on N.C.G.S. § 47-18 is misplaced because, although it applies to conveyances of land, contracts to convey, options to convey, and leases of land for more than three years, it has not been extended to require registration of an exercise of an option to renew a lease; (2) each contract or conveyance since 1951 was properly recorded, and all the assignments of the leases were timely recorded; (3) although defendants contend the failure of their predecessors to register their certificate of merger constituted a cloud on the title, defendants' argument is dismissed based on their failure to assign error; (4) viewing the evidence in the light most favorable to the nonmovant, there is evidence that defendant Oakalene Vance provided written notice to extend the lease to plaintiff within thirty days of the expiration of the second twenty-year term; and (5) acceptance of rent payments for over thirty years constituted a waiver of the requirement of notice to extend the lease.

Judge HUNTER concurring in a separate opinion.

SPRUCE PINE INDUS. PARK, INC. v. EXPLOSIVES SUPPLY CO.

[179 N.C. App. 524 (2006)]

Appeal by plaintiff from judgment and order entered 16 November 2004 by Judge James U. Downs in Mitchell County Superior Court. Heard in the Court of Appeals 10 January 2006.

*Long, Parker, Warren & Jones, P.A., by Steve Warren, for plaintiff-appellant.*

*Adams Hendon Carson Crow & Saenger, P.A., by Martin Reidinger, for defendant-appellees.*

JACKSON, Judge.

Spruce Pine Industrial Park, Inc. ("plaintiff") appeals from the trial court's granting of a directed verdict against plaintiff, and the trial court's judgment that declared that Explosives Supply Company, Inc., Oakalene Vance, and John Vance (collectively referred to as "defendants") are the owners of the leasehold interest in Tract 1,[1] allowing defendants to remain in full possession of Tract 1 through and including 7 March 2011, provided they continue to tender rent each month in the amount of $75.00 or annual rent in the amount of $900.00. Plaintiff is the owner and lessor of Tract 1 and defendants are the lessees of Tract 1.

On 7 March 1951, E.K. Sparks, as fee simple owner of Tract 1, entered into a lease agreement with Carolina Mineral Company, Inc. for a term of twenty years for seventy-five dollars per month. The lease agreement was recorded on 10 March 1951, and stated that Carolina Mineral Company, Inc. has:

the privilege . . . to renew this lease upon the same terms and conditions as herein conatained [sic] for additional twenty-year periods so long as [Carolina Mineral Company, Inc.] or its successors or assigns shall desire so to do.

---

1. Tract 1 is described as land situated in the Town of Spruce Pine, Grassy Creek Township, Mitchell County, North Carolina, and more particularly described as follows: "BEGINNING on a stake above the center of a culvert and in the west edge of Highway No. 26, and runs with the edge of said Highway south 14 east 310-1/2 feet; south 1 [degree] 30 [minutes] east 69 feet; south 15 [degrees] 30 [minutes] West 200 ft.; south 6 [degrees] west 157 feet to a stake in the old Stewart line; thence running with said line north 87 [degrees] 30 [minutes] West crossing the railroad 200 feet to a stake in the edge of the river []; thence running down and with the edge of the river north 6 [degrees] east 172 feet; north 4 [degrees] east 146-1/2 feet; north 4 [degrees] east 150-1/2 feet; north 4 [degrees] west 215 feet; north 2 [degrees] west 112 feet to a stake at the mouth of a small branch; thence running up said branch north 85 [degrees] east 188 feet to the BEGINNING. EXCEPTING AND RESERVING from the above the right of way for the C.C. & O Railway Co.

On 30 June 1953, Carolina Mineral Company, Inc. assigned its lease agreement to International Minerals and Chemical Corporation ("International Minerals") and recorded the assignment on 8 July 1953. On 6 July 1961, E.K. Sparks executed a second lease agreement with International Minerals that incorporated the 7 March 1951 leasehold agreement with Tract 1, described a second tract ("Tract 2"),[2] and included the language:

> 5. Not withstanding the provisions of the original agreement hereinabove referred to, it is specifically agreed [International Minerals] shall have the option of renewing or extending this agreement, together with the [7 March 1951] agreement . . . for an additional period of twenty (20) years after the expiration of the period of twenty (20) years provided for in said agreement . . . which original twenty (20) years period will expire 7 March 1971, upon the same terms and conditions. Such notice on the part of [International Minerals], its successors or assigns, shall be given by written notice to [E.K. Sparks], his heirs, successors or assigns, at least thirty (30) days prior to the original twenty (20) years period provided for in said [7 March 1951] agreement recorded in Book 76, Page 113.

The 1961 lease agreement stated that International Minerals had an option to renew for an additional twenty years, but not to exceed forty years. In addition, the 1961 lease agreement stated that the initial twenty-year term was from 7 March 1951 to 7 March 1971, and the agreement limited the renewals to two additional twenty-year terms, running from 1971 to 1991 and from 1991 to 2011. The 1961 lease agreement was recorded on 21 July 1961.

Upon E.K. Spark's death on 20 March 1963, he devised a life estate in Tract 1 and Tract 2 to Mittie McMahan and Arthur Buchanan, and at the death of the survivor of the two life estates, then Robert Wayne Buchanan, Charles Delbert Buchanan, and Edmond Ray Buchanan

---

2. Tract 2 is described as the land incorporated into said agreement recorded in Book 76, Page 113, Mitchell County Registry, "BEGINNING on an iron pin in the east margin of N.C. Highway No. 226, which leads from Spruce Pine to Bakersville, said iron pin being located south 0 degrees 15 minutes west 170 feet from the southeast corner of the maintenance shop of International Minerals and Chemical Corp. and runs thence with the eastern margin of said highway the following courses and distances: north 13 degrees 30 minutes east 196 feet and north 12 degrees west 460 feet to an iron pin in the eastern margin of said highway north 71 degrees east 200 feet to an iron pin; thence south 12 degrees east 540 feet to an iron pin; thence 13 degrees 30 minutes west 230 feet to an iron pin; thence north 76 degrees 30 minutes west 200 feet to the point of BEGINNING, containing 3.5 acres, more or less.

were to possess a fee simple absolute. Mittie McMahan died on 21 September 1970.

The initial twenty-year term of the 1951 and 1961 lease lapsed on 7 March 1971 while Arthur Buchanan had a life estate in Tract 1 and Tract 2, and while International Minerals held a leasehold interest in Tract 1 and Tract 2. The trial court entered finding of fact seven that "[n]o evidence has been presented by any party showing that the fee simple owners or their predecessors have received or not received any notice to extend the leasehold rights, as those extension options exist under the 1961 Novation." However, there is evidence that Arthur Buchanan handwrote a notation on the 1961 lease that stated "lease up March 1991."

On 3 July 1973, International Minerals assigned its interest in the lease for Tract 1 and Tract 2 to Sobin Chemicals, Inc., which recorded the lease on 31 October 1974. On 5 November 1979, International Minerals and Sobin Chemicals, Inc. assigned their interest in the lease for Tract 1 and Tract 2 to defendant Sam Vance and defendant Oakalene Vance, who recorded their lease on 17 January 1980.

On 21 March 1984, Arthur Buchanan and wife Revia Buchanan conveyed his interest in Tract 1 and Tract 2 to Robert Wayne Buchanan, Charles Delbert Buchanan, and Edmond Ray Buchanan, who recorded the conveyance on 3 May 1984. Following this transfer, plaintiff's predecessor, in 1990, Edmond Ray Buchanan believed that there were several breaches of the lease agreement, and sent notices of termination of the lease to the tenant, Brad Ragan, Inc., and defendants, Explosives Supply Company, Inc. and Oakalene Vance (Sam Vance being deceased). Edmond Ray Buchanan received a response only from Brad Ragan, Inc., who vacated the property that it occupied on Tract 2.

On 1 November 1984, Sam and Oakalene Vance assigned the lease for Tract 1 to defendant Explosives Supply Company, Inc., which recorded the assignment on 27 November 1984.

On 31 December 1990, before the lapse of the second twenty-year term, defendant Oakalene Vance provided written notice of intent to renew the lease to Robert Wayne Buchanan, Charles Delbert Buchanan, Edmond Ray Buchanan, and Arthur Buchanan, Jr. stating that

[f]ormal notice of the exercise of said option is hereby given and the said Oakalene B. Vance and Explosives Supply Company,

**SPRUCE PINE INDUS. PARK, INC. v. EXPLOSIVES SUPPLY CO.**

[179 N.C. App. 524 (2006)]

their heirs, successors and assigns, will continue to occupy subject premises under the terms and conditions of the aforementioned original lease, as amended.

On 27 January 1995, Robert Wayne Buchanan and wife Polly Buchanan, Charles Delbert Buchanan, and Edmond Ray Buchanan conveyed Tract 1 and Tract 2 to Edmond Ray Buchanan and Glo-Linda McHone, who recorded the conveyance on 31 January 1995. Edmond Ray Buchanan and Glo-Linda McHone conveyed Tract 1 and Tract 2 to Blaine Biddix, Dean Pitman, and Robert Pittman on 31 August 2000, who recorded the conveyance that same day. Blaine Biddix and wife Ruby Biddix, Dean Pitman and wife Kay Pitman, and Robert Pittman and wife Mary Lynn S. Pittman conveyed their interest to plaintiff on 13 October 2000, and plaintiff recorded the conveyance on 16 October 2000.

Plaintiff instituted this action on 2 September 2003 against defendants in order for plaintiff to be declared the fee simple owner of Tracts 1 and 2, and alleging that defendants' lease agreement is a cloud on the title that should be removed. On 27 April 2004, defendants moved for summary judgment. After a hearing on the motion, the Honorable Ronald K. Payne denied defendants' motion on 19 May 2004.

On 1 November 2004, the Honorable James U. Downs presided over the parties' jury trial in the Superior Court of Mitchell County. At the close of all the evidence, plaintiff and defendants moved for directed verdict pursuant to Rule 50 of the North Carolina Rules of Civil Procedure. On 16 November 2004, the trial court granted defendants' motion for directed verdict as it pertained to Tract 1, and ordered that defendants were entitled to remain in full possession of Tract 1 up to and including 7 March 2011, provided they continue to tender rent at the rate of seventy-five dollars per month. The trial court granted plaintiff's motion for directed verdict as it pertained to Tract 2, and ordered that plaintiff was the owner in fee simple of Tract 2 without any burden of any lease or encumbrance owned or held by the defendants. Plaintiff appealed to this Court.

On appeal, plaintiff argues that the trial court erred: (1) by denying plaintiff's motion for directed verdict, and granting a directed verdict in favor of defendants by concluding that defendants were entitled to remain in possession of Tract 1 up to and including 7 March 2011; and (2) by concluding that plaintiff had waived its right to contest validity of a twenty-year lease by accepting seventy-five dollars a

month in rent payments. Therefore, the only lease agreement at issue on appeal pertains to Tract 1.

"A directed verdict is properly granted where it appears, as a matter of law, that the nonmoving party cannot recover upon any view of the facts which the evidence reasonably tends to establish." *Beam v. Kerlee*, 120 N.C. App. 203, 210, 461 S.E.2d 911, 917 (1995), *cert. denied*, 342 N.C. 651, 467 S.E.2d 703 (1996). When a court considers the propriety of a motion for directed verdict, the nonmoving party is " 'entitled to the benefit of every reasonable inference which may be legitimately drawn from the evidence, and all evidentiary conflicts must be resolved in favor of the [nonmoving party].' " *Chappell v. Donnelly*, 113 N.C. App. 626, 628, 439 S.E.2d 802, 804-05 (1994) (quoting *Mecimore v. Cothren*, 109 N.C. App. 650, 653, 428 S.E.2d 470, 472, *disc. review denied*, 334 N.C. 621, 435 S.E.2d 336 (1993)).

The standard of review for directed verdict is "whether the evidence, taken in the light most favorable to the non-moving party, is sufficient as a matter of law to be submitted to the jury." *Davis v. Dennis Lilly Co.*, 330 N.C. 314, 322, 411 S.E.2d 133, 138 (1991) (citing *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E.2d 396 (1971)). "When determining the correctness of the denial for directed verdict or judgment notwithstanding the verdict, the question is whether there is sufficient evidence to sustain a jury verdict in the non-moving party's favor, or to present a question for the jury." *Id.* at 323, 411 S.E.2d at 138 (internal citations omitted).

In the present case, plaintiff instituted this action to quiet title. "An action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims[.]" N.C. Gen. Stat. § 41-10 (2005). "In order to establish a *prima facie* case for removing a cloud on title, a plaintiff must meet two requirements: (1) plaintiff must own the land in controversy, or have some estate or interest in it; and (2) defendant must assert some claim in the land which is adverse to plaintiff's title, estate or interest." *Chicago Title Ins. Co. v. Wetherington*, 127 N.C. App. 457, 461, 490 S.E.2d 593, 597 (1997) (citing *Wells v. Clayton*, 236 N.C. 102, 107, 72 S.E.2d 16, 20 (1952)), *disc. review denied*, 347 N.C. 574, 498 S.E.2d 380 (1998).

On appeal, plaintiff established that it owned Tract 1, the property in controversy. In support of plaintiff's contention that defendants have a claim on Tract 1 which is adverse to plaintiff's title, plaintiff cites North Carolina General Statutes, section 47-18. Plaintiff

asserts that defendants' failure to record the exercise of their option to renew the lease constituted a claim adverse to their title. North Carolina General Statutes, section 47-18 states that:

(a) No (i) conveyance of land, or (ii) contract to convey, or (iii) option to convey, or (iv) lease of land for more than three years shall be valid to pass any property interest as against lien creditors or purchasers for a valuable consideration from the donor, bargainer or lesser but from the time of registration thereof in the county where the land lies, or if the land is located in more than one county, then in each county where any portion of the land lies to be effective as to the land in that county.

N.C. Gen. Stat. § 47-18 (2005). Although North Carolina General Statutes, section 47-18 applies to conveyances of land, contracts to convey, options to convey, and leases of land for more than three years, it has not been extended to apply to the exercise of an option to renew or extend a lease. *See id.* Therefore, plaintiff's reliance on North Carolina General Statutes, section 47-18 is misplaced.

Although North Carolina General Statutes, section 47-18 does not apply to the exercise of an option to renew or extend a lease, it does apply to conveyances of land, contracts to convey, and leases of land in excess of three years. In the present case, each contract or conveyance since 1951 was properly recorded. The 1951 and 1961 leases were properly recorded, and all the assignments of the leases were timely recorded. Each conveyance specifically referenced the 1951 and 1961 leases, or stated that the "conveyance [was] subject to any outstanding leases or encumbrances." Therefore, plaintiff, defendants and their predecessors in interest complied with North Carolina General Statutes, section 47-18.

We now address plaintiff's argument that defendants' predecessor's failure to register their certificate of merger constituted a cloud on the title. The scope of review on appeal is confined to consideration of those exceptions set out and made the basis of assignments of error in the record on appeal. N.C. R. App. P. 10 (2005). Plaintiff failed to assign as error that defendants' predecessor's failure to register their certificate of merger constituted a cloud on the title. For this reason, plaintiff's argument is not properly before us.

Plaintiff's argument that defendants assert a claim on Tract 1 that is adverse to defendants' title is without merit, and we must

apply the correct body of law to the facts in this case. As a result, we address plaintiff's two arguments in the same discussion.

Our jurisdiction follows the rule that "if the tenant holds over after the end of the original term and pays rent as provided in the lease, the presumption is that the option to extend the term of the lease has been exercised and the tenancy continues to be that created by the lease, the rights conferred by it continuing into the extended term." *Kearney v. Hare*, 265 N.C. 570, 573, 144 S.E.2d 636, 639 (1965) (citing *Trust Co. v. Frazelle*, 226 N.C. 724, 40 S.E.2d 367 (1946)). Furthermore, "[w]hen a tenant, having the right to extend, holds over, he is presumed to do so with the intent of exercising the right to extend." *Coulter v. Finance Co.*, 266 N.C. 214, 218, 146 S.E.2d 97, 100 (1966) (citing *Kearney*, 265 N.C. 570, 144 S.E.2d 636).

"When a lease specifies the manner and method by which the tenant may extend the term, compliance with such provisions are conditions precedent to the extension of the term." *Royer v. Honrine*, 68 N.C. App. 664, 666, 316 S.E.2d 93, 95 (1984) (citing *Coulter*, 266 N.C. 214, 146 S.E.2d 97).

> In those cases in which notice to extend the term is required, and none is given, the landlord may treat the tenant who holds over after the expiration of the original term as a trespasser and sue for possession; or, alternatively, the landlord may waive the notice and treat the tenant as holding the premises by virtue of an extension on the terms of the lease.

*Id.* (citing *Realty Co. v. Demetrelis*, 213 N.C. 52, 194 S.E. 897 (1938)). A "provision for notice [of a renewal of a lease] is for the benefit of the lessor and may be waived by him." *Coulter*, 266 N.C. at 218, 146 S.E.2d at 100. "Acceptance by the lessor of the rent which the lease provides shall be paid during the extended term is a waiver of such notice by the lessor, nothing else appearing." *Id.* (citing 32 Am. Jur., *Landlord and Tenant*, § 980; Anno: 27 A.L.R. 981, 993).

In the present case, the 1951 lease agreement required that Carolina Mineral Company, Inc., the lessee, and its successors and assigns have the privilege "to renew [the] lease upon the same terms and conditions as herein conatained [sic] for additional twenty-year periods." Furthermore, the 1961 lease agreement provided a specific manner and method by which the lessee could extend the lease by requiring that the lessee give notice at least thirty days prior to the end of the original twenty-year period. At the end of the first twenty-

year term, International Minerals, the lessee, failed to provide notice, and Arthur Buchanan, the lessor and owner of Tract 1, either could have treated International Minerals as a trespasser and sued for possession, or waived the notice requirement. Arthur Buchanan and his successors continued to accept rent payments of seventy-five dollars per month from 1971 until 2002, when plaintiff instituted this action. Furthermore, notwithstanding the *contra* findings of fact by the trial court and viewing the evidence in the light most favorable to the non-movant, there is evidence that defendant Oakalene Vance provided written notice to extend the lease to plaintiff within thirty days of the expiration of the second twenty-year term. The acceptance of rent payments for over thirty years must constitute a waiver of the requirement of notice to extend the lease. Since plaintiff and their successors waived the notice requirement, the 1951 and 1961 leases were extended, and defendant is entitled to remain in possession of Tract 1 until 7 March 2011 pursuant to the terms of the 1951 and 1961 lease agreement. Accordingly, we affirm.

Affirmed.

Judge WYNN concurs.

Judge Hunter concurs in a separate opinion.

HUNTER, Judge, concurring.

I agree with the majority's analysis in the instant case. I write separately to address the issue raised by plaintiff regarding the failure of defendants to record the exercise of their option to renew the lease. In the case of *Lawing v. Jaynes and Lawing v. McLean,* 285 N.C. 418, 206 S.E.2d 162 (1974), our Supreme Court examined N.C. Gen. Stat. § 47-18(a) and concluded that, according to the plain language of the statute, "registration of an option to purchase land is not essential to its validity as against lien creditors or purchasers for a valuable consideration from the optionor." *Id.* at 423, 206 S.E.2d at 166. The General Assembly later expressly amended section 47-18(a) to include options to convey land. *See* 1975 N.C. Sess. Laws ch. 507, § 1, at 527. As the majority notes, section 47-18(a) has not been extended to apply to the exercise of an option to renew or extend a lease. Plaintiff cites no authority for his position on this issue. Instead, plaintiff cites the following policy language in support of his argument:

Where a record option has lapsed by expiration of the date stated in the option and where no recorded exercise or extension of the option exists, the title examiner should be able to conclude that the option is no longer valid. Any other result places the title examiner in the role of private investigator into off-record matters and weakens the accuracy and reliability of the public records.

James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 24-20, at 1143 (5th ed. 1999). While the extension of section 47-18(a) to options to renew or extend leases would certainly assist and simplify the task of title examination in this State, this Court may not usurp the rightful power of the General Assembly. As illustrated by the *Lawing* case, extension of section 14-18(a) is a legislative task, not a judicial one.