COLLINS, Judge.
*513 *130 Plaintiffs appeal the trial court's order granting summary judgment in favor of Defendants as to Plaintiffs' action alleging seven claims, including breach of contract. Plaintiffs' claims all stem from their assertion that they possessed a valid and enforceable Right of First Refusal to purchase the property at issue at the time Defendant Sylva Supply Company, Inc., conveyed the property to Defendants Duane Jay and Irene Ball. Plaintiffs and Sylva had entered into a written lease agreement, which was subsequently assigned to Plaintiff Jackson's General Store, Inc., which contained a Right of First Refusal. However, the written lease had expired and, pursuant to this Court's opinion in Ball v. Cogdill , COA17-409, 2017 WL 6460017, 2017 N.C. App. LEXIS 1074 (N.C. Ct. App. December 19, 2017) (unpublished), Plaintiffs were holdover tenants under a year-to-year tenancy created by operation of law. The question posed by this appeal is whether the year-to-year tenancy created by operation of law included the Right of First Refusal contained in the expired written lease. We hold that it did not.
I. Procedural History and Factual Background
On 19 May 1999, Crystal Cogdill[1] (Cogdill) and Sylva Supply Company, Inc. (Sylva), entered into a "Buy-Sell and Lease Agreement" (Original Lease) by which Sylva leased the building located at 582 West Main Street (Property) to Cogdill. The lease was for a period of five years and included an option to renew for a single, additional period of five years. To exercise the option to renew, Cogdill had to provide written notice to Sylva no later than thirty days before the expiration of the first, five-year period. The renewal terms were to be determined at *131 the time of renewal; however, the terms of the renewed lease were to be determined by the parties at least ninety days before the expiration of the first, five-year lease period.[2] The first, five-year period expired on 31 May 2004.
The Original Lease granted Cogdill a Right of First Refusal to purchase the Property, should Sylva wish to sell the Property. Sylva was required to notify Cogdill by certified mail of the option to purchase the Property at the lowest price and on the same terms and conditions Sylva was willing to accept from other purchasers. If, within fifteen days of receiving Sylva's offer, Cogdill did not mail Sylva notice that she intended to exercise her Right of First Refusal to purchase the Property, Sylva had the right to sell the Property to other purchasers.
On 1 June 1999, a "Memorandum of Lease and Right of First Refusal" memorializing the Original Lease was recorded in the Jackson County Public Registry. On 1 July 1999, Cogdill assigned the Original Lease to Jackson's General Store, Inc. (Jackson's), a business incorporated by Cogdill.
On 7 June 2001, Cogdill and Sylva executed an "Amendment to Lease Agreement" (Lease), which amended the original rental period from five years to seven years and, thus, extended the original rental period end date from 31 May 2004 to 31 May 2006. If Sylva opted to renew the Lease for an additional, seven-year period, the new rental period would run from 1 June 2006 to 31 May 2013. The amendment also modified the amount of rent to be paid. All other terms remained unmodified.
No written notice was given to renew the Lease beyond the expiration of the initial seven-year period, which ended 31 May 2006. However, Plaintiffs continuously remained in tenancy.
On 7 May 2015, without first giving Plaintiffs an option to the buy the Property, Sylva sold the Property to Duane Jay and Irene Ball (the Balls). In June 2016, the Balls instituted a summary ejectment action *514 against Plaintiffs. Both the small claims court and district court ruled in favor of Plaintiffs and dismissed the action. The Balls appealed to the Court of Appeals.
While the appeal was pending, Plaintiffs filed the complaint in the present action. In the complaint, Plaintiffs alleged causes of action for breach of contract, fraud, constructive fraud, civil conspiracy, claim to set aside deed, tortious interference with contract, and unfair and *132 deceptive acts or practices. These claims were based on Plaintiffs' assertion that they were wrongfully denied the right to exercise their Right of First Refusal to purchase the Property. Plaintiffs also filed a notice of lis pendens .
On 8 September 2017, Defendants moved to dismiss the complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 19 December 2017, this Court issued Ball v. Cogdill ,[3] holding as follows: "Where [Cogdill and Jackson's] remained in tenancy after the expiration of their lease, the lease became a year-to-year tenancy. Because [the Balls] failed to provide the necessary 30 days' notice, the trial court did not err in denying [the Balls'] summary ejectment complaint." Id. at 1, 2017 N.C. App. LEXIS 1074 at *1.
On 24 January 2018, Defendants filed an amended motion to dismiss, citing this Court's opinion in Ball as further support for dismissal. On 19 February 2018, Plaintiffs filed a motion for partial summary judgment, also citing this Court's opinion in Ball as support for its motion.
The trial court heard Defendants' original motion to dismiss, but did not consider this Court's opinion in Ball , and entered an order on 12 March 2018 denying the motion. On 16 March 2018, Defendants filed an answer to Plaintiffs' motion for partial summary judgment and raised the doctrine of collateral estoppel as a defense to Plaintiffs' claims.
On 2 April 2018,[4] the trial court heard Plaintiffs' motion for partial summary judgment and Defendants' amended motion to dismiss. Defendants' motion was converted to a motion for summary judgment because the trial court considered the Court of Appeals' opinion in Ball , a matter outside the pleadings. On 16 April 2018, the trial court entered its order denying Plaintiffs' motion for partial summary judgment and granting Defendants' motion for summary judgment. From this order, Plaintiffs appeal.
II. Jurisdiction
The trial court's 16 April 2018 order granting Defendants' motion for summary judgment was a final judgment. Jurisdiction of this appeal *133 is therefore proper under N.C. Gen. Stat. § 7A-27(b)(1) (2018) and N.C. Gen. Stat. § 1-271 (2018).
III. Discussion
A. Court of Appeals' opinion in Ball v. Cogdill
We begin this discussion with a summary of this Court's opinion in Ball v. Cogdill , which involved the same background facts and the same parties, except Sylva, as the case presently before us. In Ball , this Court rejected the Balls' argument that the trial court erred by denying their complaint for summary ejectment because the trial court erroneously concluded that Cogdill and Jackson's were under a lease when the Balls attempted to summarily evict them from the Property. This Court noted, and Cogdill and Jackson's conceded, that no written notice had been given to renew the Lease beyond the expiration of the first, seven-year period. Id . at *2, 2017 N.C. App. LEXIS 1074 at *4. This Court explained, however, that the "failure to renew a lease does not automatically result in ejectment of a tenant." Id . The record reflected that Cogdill and Jackson's had "remained in tenancy" after the expiration of the Lease and paid rent every month to the Balls, and the Balls had accepted the *515 payment. Id. *2-3, 2017 N.C. App. LEXIS 1074 at *5-6. Citing our Supreme Court's opinion in Coulter v. Capitol Fin. Co. , 266 N.C. 214, 217, 146 S.E.2d 97, 100 (1966), this Court concluded the Lease had thus become a year-to-year tenancy created by operation of law, terminable by either party upon giving the other thirty days' notice directed to the end of the year of such new tenancy. Id . *2, 2017 N.C. App. LEXIS 1074 at *5. As the Balls had failed to give Cogdill and Jackson's the requisite thirty days' notice before demanding they vacate the Property, the Balls could not summarily eject Cogdill and Jackson's after they refused to vacate. Id . *2-3, 2017 N.C. App. LEXIS 1074 at *6.
B. Present Appeal
The parties agree that, pursuant to Ball , Plaintiffs were under a year-to-year tenancy created by operation of law when Sylva sold the Property to the Balls.[5] The parties disagree, however, as to the legal import of the Ball decision regarding the Right of First Refusal contained in the written Lease. Plaintiffs argue that all of their rights and duties under the Lease, including their Right of First Refusal, continued in effect after the Lease expired and became a year-to-year tenancy created by operation of law. Defendants argue that following the expiration of the written Lease, the Right of First Refusal did not become part of the new year-to-year tenancy created by operation of law. Thus, the issue before us is *134 whether the year-to-year tenancy created by operation of law included the Right of First Refusal contained in the written Lease. We hold that it did not.
C. Standard of Review
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2018). The standard of review of an appeal from summary judgment is de novo . In re Will of Jones , 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).
D. Analysis
When a lease for a fixed term of a year, or more, expires, a tenant holds over, and "the lessor elects to treat him as a tenant, a new tenancy relationship is created as of the end of the former term." Kearney v. Hare , 265 N.C. 570, 573, 144 S.E.2d 636, 638 (1965). "This is, by presumption of law, a tenancy from year to year, the terms of which are the same as those of the former lease in so far as they are applicable ...." Id . Our appellate courts have not squarely addressed whether a right of first refusal, which "creates in its holder ... the right to buy land before other parties if the seller decides to convey it[,]" Smith v. Mitchell , 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980), is a term "applicable" to a year-to-year tenancy created by operation of law after the expiration of a written lease. Our appellate courts have, however, addressed this issue in the context of an option to purchase property in a written lease agreement. Id . (explaining that a right of first refusal is analogous to an option to purchase, which creates in its holder the power to compel sale of land).
This Court concluded in Vernon v. Kennedy , 50 N.C. App. 302, 273 S.E.2d 31 (1981), that an option in the written lease to purchase the leased property could not be construed as "applicable" to the tenancy from year to year created by operation of law. Id. at 304, 273 S.E.2d at 32. The one-year lease in Vernon included an option to extend the lease for an additional, one-year period. The lease thus provided, "at an absolute maximum, for a term of two years" and could not remain "in force after 30 April 1973." Id. at 303, 273 S.E.2d at 32. The lease also included an option for plaintiffs to purchase the property "at any time during the term of this lease or extended period thereof ...." Id .
*135 On 21 November 1979, plaintiffs in Vernon brought an action for specific performance of the option to purchase contained in the written lease. This Court explained that upon the expiration of the written lease, a new tenancy relationship had been created by operation of law, and thus, plaintiffs "were at best tenants *516 from year to year under the applicable terms of the expired lease." Id. This Court held that the option to purchase could not be construed as "applicable" to the tenancy from year to year because by its own terms, the option was "limited to 'the term of this lease or the extended period thereof.' " Id . at 304, 273 S.E.2d at 32 (quoting the contract at issue). "Since the lease, again by its own terms, could not be extended beyond 30 April 1973, an attempt to exercise the option in 1979 would come outside the extended term of the lease." Id .
A similar result was reached in Hannah v. Hannah, 21 N.C. App. 265, 204 S.E.2d 212 (1974), where this Court held that defendant's obligation under a written lease to purchase plaintiff's stock and equipment at the end of the lease did not remain in effect throughout the period the plaintiff was permitted to hold over after the expiration of the lease. Id . at 267, 204 S.E.2d at 214. By written agreement, defendant leased his filling station to the plaintiff for a five-year period and agreed that " '[i]f at the end of five years, [defendant] should want possession of said filling station,' he would 'purchase all stock and equipment at 20% discount ....' " Id . Defendant did not want possession at the end of five years, but permitted plaintiff to hold over and remain in possession as his tenant for more than fifteen additional years. Id . When defendant proposed to raise plaintiff's rent, plaintiff demanded that defendant comply with the provisions of the lease agreement to purchase the stock and equipment. Defendant refused.
On appeal, this Court looked at the "express language of the original lease [which] brought the purchase agreement into play only if 'at the end of five years,' the landlord should want possession." Id . at 267-68, 204 S.E.2d at 214. As the original lease term was also for a period of five years, "obviously the parties contemplated the possibility that there might be a holding over or an extension after the initial five-year term, but nothing in the language indicate[d] that the parties intended the purchase obligation to remain in effect throughout whatever holdover or extended period might occur." Id . Accordingly, this Court held "that defendant's obligation to purchase as contained in the ... written agreement was no longer in effect when, more than twenty years thereafter, he was called upon to fulfill it." Id . at 268, 204 S.E.2d at 214.
In a slightly different factual scenario, the Court in Davis v. McRee , 299 N.C. 498, 263 S.E.2d 604 (1980), concluded that an option to purchase *136 was incorporated into an express extension of an original lease. The parties entered into a written, one-year lease agreement, which contained an option for defendants to purchase the property during the lease period. When the agreement expired on 31 January 1974, defendants continued in tenancy and continued to make rental payments until 13 August 1974. On that date, the parties met and added the following language to the end of the original lease agreement: "The term of this lease shall be from Jan. 31, 1974 through Jan. 31, 1976." Id. at 500, 263 S.E.2d at 605.
In the fall of 1975, defendants indicated their intention to exercise the option to purchase. They arranged to borrow the purchase money, and plaintiffs executed a deed to the property. The parties ultimately disagreed on the sale price, and plaintiffs instituted an action to cancel the deed. In court, plaintiffs argued that the option to purchase had died with the expiration of the term of the original lease and that the new agreement was not effective to revive the option. Id . at 501, 263 S.E.2d at 606. Our Supreme Court noted, "Where the parties have made a separate agreement extending the lease, the agreement must be examined in light of all the circumstances in order to ascertain the meaning of its language, with the guide of established principles for the construction of contracts, and in the light of any reasonable construction placed on it by the parties themselves." Id. at 502, 263 S.E.2d at 606-07 (quotation marks and citation omitted). The Court held it was "evident from the conduct of the parties here that they intended to incorporate the option to purchase in their August agreement to extend the lease." Id. at 503, 263 S.E.2d at 607.
As in Vernon and Hannah , Defendants' obligation to offer Plaintiffs the Right of First Refusal to purchase the Property *517 was not applicable to the year-to-year tenancy created by operation of law, and did not remain in effect throughout the period in which Plaintiffs were permitted to hold over after the expiration of the Lease. By written agreement, the Lease expired by its express terms on 31 May 2006, unless timely renewed for a second, seven-year period. Prior to the expiration of the Lease on 31 May 2006, Plaintiffs failed to timely exercise their option to renew the Lease for a second, seven-year period. Additionally, prior to the expiration of the Lease on 31 May 2006, Plaintiffs did not exercise their Right of First Refusal as Defendants did not desire to sell the Property. Moreover, even if timely notice to renew had been given, the Lease provided, at an absolute maximum, for a period of fourteen years and could not remain in force after 31 May 2013.
As in Vernon , upon the expiration of the written Lease, a new tenancy relationship was created by operation of law, and thus, Plaintiffs *137 were tenants from year to year under the applicable terms of the expired lease. Ball at *2, 2017 N.C. App. LEXIS 1074 at *5. Although the Right of First Refusal clause itself does not specifically reference the Lease expiration dates, the Lease by its own terms could not be extended beyond 31 May 2013. Thus, an attempt to enforce the Right of First Refusal in 2015 "would come outside the extended term of the lease." Vernon , 50 N.C. App. at 304, 273 S.E.2d at 32.
Moreover, unlike in Davis , the parties in this case did not expressly extend the Lease after its expiration and Plaintiffs' attempt to exercise their Right of First Refusal was not made during such extended term, but was made nine years after the Lease's expiration. Furthermore, while the parties' conduct in Davis evidenced an intent to incorporate the purchase option into the express extension of the lease agreement, the parties' conduct in entering into the Lease in this case did not. The terms of the Lease specifically did not provide for incorporation of the Right of First Refusal as the renewal terms were to be determined by the parties at least ninety days before the expiration of the first, seven-year lease period. See Hannah , 21 N.C. App. at 268, 204 S.E.2d at 214 ("nothing in the language indicate[d] that the parties intended the purchase obligation to remain in effect throughout whatever holdover or extended period might occur").[6] Accordingly, Defendants' obligation to offer Plaintiffs the Right of First Refusal contained in the written Lease was no longer in effect when, approximately nine years thereafter, they were called upon to do so. See Vernon , 50 N.C. App. at 304, 273 S.E.2d at 32 ; Hannah , 21 N.C. App. at 268, 204 S.E.2d at 214 ; see also Atlantic Product Co. v. Dunn , 142 N.C. 471, 471, 55 S.E. 299, 300 (1906) (holding that an option to renew a lease or purchase property contained in a written lease can "be exercised only while the lease was in force"); Smyth v. Berman , 31 Cal.App.5th 183, 242 Cal.Rptr.3d 336 (2019) (holding that a right of first refusal contained in an expired written lease was not an essential term which carried over into the holdover tenancy); Bateman v. 317 Rehoboth Ave., LLC , 878 A.2d 1176, 1185 (Del. Ch. 2005) (holding that a right of first refusal in a lease agreement does not presumptively carry over into a holdover tenancy).
This result is supported by the public policy purposes that statutory and common law holdover tenancies were generally created to *138 address, as explained by Vice Chancellor Strine of the Court of Chancery of Delaware:
Historically, in our legal tradition, when tenants continued to occupy property beyond the expiration of a lease, landlords were entitled to treat holdover tenants as trespassers, or to summarily evict them. The doctrine of 'self-help' arose in the interest of landlords and incoming tenants, allowing landlords to promptly recover possession of leased property from tenants who held it improperly. Not surprisingly, widespread use of 'self-help' remedies led to concerns for the endangerment of persons and property, and breaches of the *518 peace. Statutory [and common law] holdover tenancies emerged as a means of protecting tenants from self-help by landlords who were legally entitled to treat them as trespassers -- that is, to keep people from being dumped out on the street. [Holdover tenancies] attempt to maintain the status quo of a tenant's occupancy and use of leased property for a short period of time during which a landlord can pursue summary eviction. This approach balances the policy objectives of permitting landlords and incoming tenants to recover possession of property in a timely fashion and permitting outgoing tenants to move out in an orderly manner, thereby 'improving the prospects for preserving the public peace.'
Bateman , 878 A.2d at 1182-83. "Holdover tenancies are therefore not intended to prolong the existence of legal rights between the landlord and tenant, such as rights of first refusal, that are otherwise unrelated to occupancy and use of property." Id. at 1183. Moreover, "[u]nlike an option to purchase property, which an option holder can proactively exercise, a right of first refusal can be exercised only when the holder of property entertains an offer from a third party to purchase the property." Id . at 1183-84. Thus, "the extension of a right of first refusal beyond the termination of the contract that conveyed that right makes little sense, given the ease with which the exercise of such a right could be frustrated." Id . at 1184.
If a right of first refusal presumptively carried forward into a holdover tenancy, a landlord wishing to nullify that right could easily do so by evicting the holdover tenant and selling the property one day later, both of which would be within its rights as the landlord of a holdover tenant. This creates an incentive for landlords to evict holdover *139 tenants as soon as possible [ ], a result at odds with the stability of commercial tenancies. The contrary rule that carries such purchase options forward only if the parties so specify avoids this result, thereby making holdover tenancies more stable.
Smyth , 242 Cal.Rptr.3d at 345 (internal quotation marks and citation omitted).
Plaintiffs cite no authority for their assertion that the Right of First Refusal provided under the Lease continued in effect when Plaintiffs failed to renew the Lease and continued to inhabit the Property as holdover tenants on a year-to-year basis, beyond Ball's inclusion of this quote from Coulter v. Capitol Fin. Co. :
"Nothing else appearing, when a tenant for a fixed term of one year or more holds over after the expiration of such term, the lessor has an election. He may treat him as a trespasser and bring an action to evict him and to recover reasonable compensation for the use of the property, or he may recognize him as still a tenant, having the same rights and duties as under the original lease , except that the tenancy is one from year to year and is terminable by either party upon giving to the other 30 days' notice directed to the end of any year of such new tenancy."
Ball at *2, 2017 N.C. App. LEXIS 1074 at *4-5 (quoting Coulter , 266 N.C. at 217, 146 S.E.2d at 100 ) (emphasis added). However, Coulter relied on Kearney v. Hare , cited above, which more precisely explains that when a lease for a fixed term of a year, or more, expires, a tenant holds over, and "the lessor elects to treat him as a tenant, a new tenancy relationship is created as of the end of the former term." Kearney , 265 N.C. at 573, 144 S.E.2d at 638. "This is, by presumption of law, a tenancy from year to year, the terms of which are the same as those of the former lease in so far as they are applicable ...." Id .
To be sure, there is precedent from several states holding that rights of first refusal (or other purchase options) presumptively carry forward into holdover tenancies. See Smyth , 242 Cal.Rptr.3d at 345 (listing cases discussing presumptive rights and options in holdover tenancies). However, the majority rule is the rule supported by our case law and general policy that we apply today. See id. The Right of First Refusal in this case was not "applicable" to the year-to-year tenancy created by operation of law after the expiration of the Lease.
*519 *140 IV. Conclusion
For the reasons stated above, the Right of First Refusal in the written Lease was not a term applicable to the year-to-year tenancy created by operation of law upon the expiration of the written Lease. Accordingly, Plaintiffs were not entitled to be given the Right of First Refusal to purchase the Property prior to Sylva's sale of the Property to the Balls. Because of our holding, we need not reach Plaintiffs' argument that the Right of First Refusal did not violate the rule against perpetuities. As there was no genuine issue of material fact and Defendants were entitled to judgment as a matter of law, the trial court's order granting summary judgment in favor of Defendants is affirmed.
AFFIRMED.
Judge ZACHARY concurs.
Judge TYSON dissents by separate opinion.

Then Crystal Cogdill Jones.

The apparent internal incongruency of this term has no significance in this appeal.

The Balls were the plaintiffs while Cogdill and Jackson's were the defendants in the summary ejectment action. The parties' roles are reversed on this appeal. Sylva was not a party.

The order states that this cause of action was "heard before the undersigned judge presiding over the March 26, 2018 civil session of the Superior Court of Haywood County[.]" However, both parties stipulated that the "Order appealed from was the result of a hearing held during the April 2, 2018 civil session of the Superior Court of Haywood County[.]"

The parties each argue the doctrine of collateral estoppel to support this shared conclusion.

The dissent's analysis relies upon testimonial evidence contained in a transcript from a prior case, concerning a different issue, before this Court. That transcript is not part of this record on appeal. Our "review is solely upon the record on appeal, the verbatim transcript of proceedings ..., and any other items filed pursuant to this Rule 9." N.C. R. App. P. 9(a) (2018).