Hannah v. Hannah

CHARLES B. HANNAH v. WILLIAM J. HANNAH

No. 7430DC46

(Filed 17 April 1974)

Landlord and Tenant § 14— holding over — purchase agreement of original lease inapplicable

Where plaintiff and defendant entered into a written lease agreement in 1948 whereby defendant landlord agreed to purchase all stock and equipment of the filling station in question should he decide he wanted possession at the end of five years, defendant's obligation to purchase was no longer in effect when, more than twenty years thereafter, defendant nearly doubled the rent, plaintiff was forced to liquidate, and plaintiff called upon defendant to repurchase in accordance with the 1948 agreement.

APPEAL by defendant from Leatherwood, Judge, 21 May 1973 Session of District Court held in HAYWOOD County.

Action for breach of contract. In his complaint, plaintiff alleged:

In May 1948 defendant owned a service station and store building known as "Medford Farm Service Station" located on what was then U. S. Highway 19 and 23. In May 1948 plaintiff and defendant entered into a written agreement reading as follows:

"This is to certify that I, Bill J. Hannah, do hereby lease one filling station to Charlie B. Hannah for a period of five years at the rate of $40.00 per month. If at the end of five years, I should want possession of said filling station, I purchase all stock and equipment at 20% discount, and not over 2 years bills."

At the time said lease was entered into in May 1948, "it was contemplated between the parties that a new highway was to be constructed and to be designated as U. S. Highway 19 and

23, which said highway when constructed would reroute and remove considerable portions of the traffic from the Medford Farm Service Station, and it was understood and agreed between the parties that when said new road was opened that the monthly rental to be paid in consideration of said lease would be reduced to compensate for loss of traffic and business." In May 1953 said new road had been completed and the parties agreed to reduce the monthly rental to $38.00 per month. Thereafter plaintiff continued in possession and continued paying $38.00 per month rent until defendant, by letter dated 4 June 1968, advised plaintiff that the rental had been increased from $38.00 per month to $75.00 per month. "[B]y giving notice of a rental increase almost double what plaintiff had been paying, said amount being grossly excessive and unreasonable, the defendant was in effect terminating his agreement with plaintiff and was forcing and demanding that he give up the leased premises, which plaintiff did in fact do." Although demand was made by plaintiff upon defendant, defendant refused to comply with the provisions of his lease agreement with plaintiff to repurchase stock and equipment at a 20% discount, including not over two-year-old accounts receivable. Because of such refusal, plaintiff was forced to liquidate the same. Plaintiff had on hand inventory valued at $1,913.45, accounts receivable not over two years old of $1,548.26, and equipment valued at $1,000.00, for a total of $4,461.71, "which less twenty (20%) per cent discount was valued at $3,569.37." After due diligence plaintiff liquidated said inventory, accounts, and equipment for $2,730.20. Because of defendant's failure to honor his agreement, plaintiff has suffered damages in the amount of the difference between $3,569.37 and $2,730.20, or $839.17, for which amount plaintiff prayed judgment against defendant.

Defendant filed answer, setting up as a first defense "[t]hat the complaint fails to state a cause of action against the defendant upon which relief can be granted."

On 21 May 1973 the trial court entered an order denying defendant's first defense. The court then heard the case without a jury and entered judgment finding facts and making conclusions of law on the basis of which the court adjudged that plaintiff recover of defendant $839.17 with interest and costs. Defendant appealed, making as his only assignment of error that the court erred in denying his first defense.

*Brown, Ward & Haynes, P.A., by Gavin A. Brown for plaintiff appellee.*

*Holt & Haire, P.A., by Creighton W. Sossomon for defendant appellant.*

PARKER, Judge.

Defendant appellant noted only one assignment of error, that the court erred in denying his Rule 12 (b) (6) defense that the complaint failed to state a claim upon which relief can be granted. The appeal itself, however, is an exception to the judgment and raises the question whether the facts found support it. *Dilday v. Board of Education,* 267 N.C. 438, 148 S.E. 2d 513. In the present case the trial court, after denying defendant's first defense, heard the evidence and entered judgment making detailed findings of fact which are in all material respects substantially the same as the facts alleged in the complaint. The question presented by this appeal, therefore, is whether those facts support the judgment. In our opinion they do not.

By clear language in the 1948 written agreement defendant leased his filling station to plaintiff "for a period of five years at the rate of $40.00 per month." By not so clear language, he also agreed that "[i]f at the end of five years, [he] should want possession of said filling station," he would "purchase all stock and equipment at 20% discount, and not over 2 years bills." As matters turned out, defendant did not want possession at the end of five years. Instead, he permitted plaintiff to hold over and remain in possession as his tenant at a reduced monthly rental for more than fifteen additional years, and even then he offered to continue to lease, though at an increased rental. The question for decision is whether the obligation to purchase continued in effect throughout the hold over period. We hold that it did not.

It is true that in the absence of a statute, a provision in the original lease, or a new arrangement governing the holding over, "the general rule is that the tenancy arising from the tenants holding over with the consent of the landlord is presumed to be upon the same covenants and terms as the original lease, so far as they are applicable to the new tenancy." 49 Am. Jur. 2d, Landlord and Tenant, § 1146, p. 1100. Here, however, the express language of the original lease brought the purchase agreement into play only if "at the end of five years," the landlord

should want possession. Since the term of the original lease was also for five years, obviously the parties contemplated the possibility that there might be a holding over or an extension after the initial five-year term, but nothing in the language indicates that the parties intended the purchase obligation to remain in effect throughout whatever holdover or extended period might occur. We do not interpret, as plaintiff urges, the phrase "at the end of five years" as meaning "at the end of the term of this lease or at the end of any renewal or extension thereof, including any extension effected by the tenants holding over with the landlord's consent." On the contrary, in our opinion the words "at the end of five years" mean exactly what they say. This conclusion finds support in the reasoning employed in cases cited in Annotation in 15 A.L.R. 3d 470, § 7, p. 491, et seq.

We hold that defendant's obligation to purchase as contained in the 1948 written agreement was no longer in effect when, more than twenty years thereafter, he was called upon to fulfill it. The judgment appealed from is

Reversed.

Chief Judge BROCK and Judge BALEY concur.