IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-845

Filed: 7 May 2019

Jackson County, No. 17 CVS 439

CRYSTAL COGDILL and JACKSON'S GENERAL STORE, INC., Plaintiffs,

v.

SYLVA SUPPLY COMPANY, INC., DUANE JAY BALL and IRENE BALL, Defendants.

Appeal by Plaintiffs from order entered 16 April 2018 by Judge Mark E. Powell in Jackson County Superior Court. Heard in the Court of Appeals 31 January 2019.

*The Law Firm of Diane E. Sherrill, PLLC, by Diane E. Sherrill, for Plaintiffs-Appellants.*

*Coward, Hicks, & Siler, P.A., by Andrew C. Buckner, for Defendants-Appellees.*

COLLINS, Judge.

Plaintiffs appeal the trial court's order granting summary judgment in favor of Defendants as to Plaintiffs' action alleging seven claims, including breach of contract. Plaintiffs' claims all stem from their assertion that they possessed a valid and enforceable Right of First Refusal to purchase the property at issue at the time Defendant Sylva Supply Company, Inc., conveyed the property to Defendants Duane Jay and Irene Ball. Plaintiffs and Sylva had entered into a written lease agreement, which was subsequently assigned to Plaintiff Jackson's General Store, Inc., which contained a Right of First Refusal. However, the written lease had expired and,

pursuant to this Court's opinion in *Ball v. Cogdill*, COA17-409, 2017 N.C. App. LEXIS 1074 (N.C. Ct. App. December 19, 2017) (unpublished), Plaintiffs were holdover tenants under a year-to-year tenancy created by operation of law. The question posed by this appeal is whether the year-to-year tenancy created by operation of law included the Right of First Refusal contained in the expired written lease. We hold that it did not.

## I. Procedural History and Factual Background

On 19 May 1999, Crystal Cogdill[1] (Cogdill) and Sylva Supply Company, Inc. (Sylva), entered into a "Buy-Sell and Lease Agreement" (Original Lease) by which Sylva leased the building located at 582 West Main Street (Property) to Cogdill. The lease was for a period of five years and included an option to renew for a single, additional period of five years. To exercise the option to renew, Cogdill had to provide written notice to Sylva no later than thirty days before the expiration of the first, five-year period. The renewal terms were to be determined at the time of renewal; however, the terms of the renewed lease were to be determined by the parties at least ninety days before the expiration of the first, five-year lease period.[2] The first, five-year period expired on 31 May 2004.

---

[1] Then Crystal Cogdill Jones.
[2] The apparent internal incongruency of this term has no significance in this appeal.

The Original Lease granted Cogdill a Right of First Refusal to purchase the Property, should Sylva wish to sell the Property.  Sylva was required to notify Cogdill by certified mail of the option to purchase the Property at the lowest price and on the same terms and conditions Sylva was willing to accept from other purchasers.  If, within fifteen days of receiving Sylva's offer, Cogdill did not mail Sylva notice that she intended to exercise her Right of First Refusal to purchase the Property, Sylva had the right to sell the Property to other purchasers.

On 1 June 1999, a "Memorandum of Lease and Right of First Refusal" memorializing the Original Lease was recorded in the Jackson County Public Registry.  On 1 July 1999, Cogdill assigned the Original Lease to Jackson's General Store, Inc. (Jackson's), a business incorporated by Cogdill.

On 7 June 2001, Cogdill and Sylva executed an "Amendment to Lease Agreement" (Lease), which amended the original rental period from five years to seven years and, thus, extended the original rental period end date from 31 May 2004 to 31 May 2006.  If Sylva opted to renew the Lease for an additional, seven-year period, the new rental period would run from 1 June 2006 to 31 May 2013.  The amendment also modified the amount of rent to be paid.  All other terms remained unmodified.

No written notice was given to renew the Lease beyond the expiration of the initial seven-year period, which ended 31 May 2006. However, Plaintiffs continuously remained in tenancy.

On 7 May 2015, without first giving Plaintiffs an option to the buy the Property, Sylva sold the Property to Duane Jay and Irene Ball (the Balls). In June 2016, the Balls instituted a summary ejectment action against Plaintiffs. Both the small claims court and district court ruled in favor of Plaintiffs and dismissed the action. The Balls appealed to the Court of Appeals.

While the appeal was pending, Plaintiffs filed the complaint in the present action. In the complaint, Plaintiffs alleged causes of action for breach of contract, fraud, constructive fraud, civil conspiracy, claim to set aside deed, tortious interference with contract, and unfair and deceptive acts or practices. These claims were based on Plaintiffs' assertion that they were wrongfully denied the right to exercise their Right of First Refusal to purchase the Property. Plaintiffs also filed a notice of *lis pendens*.

On 8 September 2017, Defendants moved to dismiss the complaint under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. On 19 December 2017, this Court issued *Ball v. Cogdill*,[3] holding as follows: "Where [Cogdill and Jackson's] remained in tenancy after the expiration of their lease, the lease became a year-to-

---

[3] The Balls were the plaintiffs while Cogdill and Jackson's were the defendants in the summary ejectment action. The parties' roles are reversed on this appeal. Sylva was not a party.

year tenancy. Because [the Balls] failed to provide the necessary 30 days' notice, the trial court did not err in denying [the Balls'] summary ejectment complaint." *Id.* at *1.

On 24 January 2018, Defendants filed an amended motion to dismiss, citing this Court's opinion in *Ball* as further support for dismissal. On 19 February 2018, Plaintiffs filed a motion for partial summary judgment, also citing this Court's opinion in *Ball* as support for its motion.

The trial court heard Defendants' original motion to dismiss, but did not consider this Court's opinion in *Ball*, and entered an order on 12 March 2018 denying the motion. On 16 March 2018, Defendants filed an answer to Plaintiffs' motion for partial summary judgment and raised the doctrine of collateral estoppel as a defense to Plaintiffs' claims.

On 2 April 2018,[4] the trial court heard Plaintiffs' motion for partial summary judgment and Defendants' amended motion to dismiss. Defendants' motion was converted to a motion for summary judgment because the trial court considered the Court of Appeals' opinion in *Ball*, a matter outside the pleadings. On 16 April 2018, the trial court entered its order denying Plaintiffs' motion for partial summary

---

[4] The order states that this cause of action was "heard before the undersigned judge presiding over the March 26, 2018 civil session of the Superior Court of Haywood County[.]" However, both parties stipulated that the "Order appealed from was the result of a hearing held during the April 2, 2018 civil session of the Superior Court of Haywood County[.]"

judgment and granting Defendants' motion for summary judgment. From this order, Plaintiffs appeal.

## II. Jurisdiction

The trial court's 16 April 2018 order granting Defendants' motion for summary judgment was a final judgment. Jurisdiction of this appeal is therefore proper under N.C. Gen. Stat. § 7A-27(b)(1) (2018) and N.C. Gen. Stat. § 1-271 (2018).

## III. Discussion

*A. Court of Appeals' opinion in Ball v. Cogdill*

We begin this discussion with a summary of this Court's opinion in *Ball v. Cogdill*, which involved the same background facts and the same parties, except Sylva, as the case presently before us. In *Ball*, this Court rejected the Balls' argument that the trial court erred by denying their complaint for summary ejectment because the trial court erroneously concluded that Cogdill and Jackson's were under a lease when the Balls attempted to summarily evict them from the Property. This Court noted, and Cogdill and Jackson's conceded, that no written notice had been given to renew the Lease beyond the expiration of the first, seven-year period. *Id.* at *4. This Court explained, however, that the "failure to renew a lease does not automatically result in ejectment of a tenant." *Id.* The record reflected that Cogdill and Jackson's had "remained in tenancy" after the expiration of the Lease and paid rent every month to the Balls, and the Balls had accepted the payment. *Id.* at *5-6. Citing our

Supreme Court's opinion in *Coulter v. Capitol Fin. Co.*, 266 N.C. 214, 217, 146 S.E.2d 97, 100 (1966), this Court concluded the Lease had thus become a year-to-year tenancy created by operation of law, terminable by either party upon giving the other thirty days' notice directed to the end of the year of such new tenancy. *Id.* at *5. As the Balls had failed to give Cogdill and Jackson's the requisite thirty days' notice before demanding they vacate the Property, the Balls could not summarily eject Cogdill and Jackson's after they refused to vacate. *Id.* at *6.

## B. Present Appeal

The parties agree that, pursuant to *Ball*, Plaintiffs were under a year-to-year tenancy created by operation of law when Sylva sold the Property to the Balls.[5] The parties disagree, however, as to the legal import of the *Ball* decision regarding the Right of First Refusal contained in the written Lease. Plaintiffs argue that all of their rights and duties under the Lease, including their Right of First Refusal, continued in effect after the Lease expired and became a year-to-year tenancy created by operation of law. Defendants argue that following the expiration of the written Lease, the Right of First Refusal did not become part of the new year-to-year tenancy created by operation of law. Thus, the issue before us is whether the year-to-year tenancy created by operation of law included the Right of First Refusal contained in the written Lease. We hold that it did not.

---

[5] The parties each argue the doctrine of collateral estoppel to support this shared conclusion.

*C. Standard of Review*

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2018). The standard of review of an appeal from summary judgment is *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

*D. Analysis*

When a lease for a fixed term of a year, or more, expires, a tenant holds over, and "the lessor elects to treat him as a tenant, a new tenancy relationship is created as of the end of the former term." *Kearney v. Hare*, 265 N.C. 570, 573, 144 S.E.2d 636, 638 (1965). "This is, by presumption of law, a tenancy from year to year, the terms of which are the same as those of the former lease in so far as they are applicable . . . ." *Id.* Our appellate courts have not squarely addressed whether a right of first refusal, which "creates in its holder . . . the right to buy land before other parties if the seller decides to convey it[,]" *Smith v. Mitchell*, 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980), is a term "applicable" to a year-to-year tenancy created by operation of law after the expiration of a written lease. Our appellate courts have, however, addressed this issue in the context of an option to purchase property in a

written lease agreement. *Id.* (explaining that a right of first refusal is analogous to an option to purchase, which creates in its holder the power to compel sale of land).

This Court concluded in *Vernon v. Kennedy*, 50 N.C. App. 302, 273 S.E.2d 31 (1981), that an option in the written lease to purchase the leased property could not be construed as "applicable" to the tenancy from year to year created by operation of law. *Id.* at 304, 273 S.E.2d at 32. The one-year lease in *Vernon* included an option to extend the lease for an additional, one-year period. The lease thus provided, "at an absolute maximum, for a term of two years" and could not remain "in force after 30 April 1973." *Id.* at 303, 273 S.E.2d at 32. The lease also included an option for plaintiffs to purchase the property "at any time during the term of this lease or extended period thereof . . . ." *Id.*

On 21 November 1979, plaintiffs in *Vernon* brought an action for specific performance of the option to purchase contained in the written lease. This Court explained that upon the expiration of the written lease, a new tenancy relationship had been created by operation of law, and thus, plaintiffs "were at best tenants from year to year under the applicable terms of the expired lease." *Id.* This Court held that the option to purchase could not be construed as "applicable" to the tenancy from year to year because by its own terms, the option was "limited to 'the term of this lease or the extended period thereof.'" *Id.* at 304, 273 S.E.2d at 32 (quoting the contract at issue). "Since the lease, again by its own terms, could not be extended

beyond 30 April 1973, an attempt to exercise the option in 1979 would come outside the extended term of the lease." *Id.*

A similar result was reached in *Hannah v. Hannah,* 21 N.C. App. 265, 204 S.E.2d 212 (1974), where this Court held that defendant's obligation under a written lease to purchase plaintiff's stock and equipment at the end of the lease did not remain in effect throughout the period the plaintiff was permitted to hold over after the expiration of the lease. *Id.* at 267, 204 S.E.2d at 214. By written agreement, defendant leased his filling station to the plaintiff for a five-year period and agreed that "'[i]f at the end of five years, [defendant] should want possession of said filling station,' he would 'purchase all stock and equipment at 20% discount . . . .'" *Id.* Defendant did not want possession at the end of five years, but permitted plaintiff to hold over and remain in possession as his tenant for more than fifteen additional years. *Id.* When defendant proposed to raise plaintiff's rent, plaintiff demanded that defendant comply with the provisions of the lease agreement to purchase the stock and equipment. Defendant refused.

On appeal, this Court looked at the "express language of the original lease [which] brought the purchase agreement into play only if 'at the end of five years,' the landlord should want possession." *Id.* at 267-68, 204 S.E.2d at 214. As the original lease term was also for a period of five years, "obviously the parties contemplated the possibility that there might be a holding over or an extension after the initial five-

year term, but nothing in the language indicate[d] that the parties intended the purchase obligation to remain in effect throughout whatever holdover or extended period might occur." *Id.* Accordingly, this Court held "that defendant's obligation to purchase as contained in the . . . written agreement was no longer in effect when, more than twenty years thereafter, he was called upon to fulfill it." *Id.* at 268, 204 S.E.2d at 214.

In a slightly different factual scenario, the Court in *Davis v. McRee*, 299 N.C. 498, 263 S.E.2d 604 (1980), concluded that an option to purchase was incorporated into an express extension of an original lease. The parties entered into a written, one-year lease agreement, which contained an option for defendants to purchase the property during the lease period. When the agreement expired on 31 January 1974, defendants continued in tenancy and continued to make rental payments until 13 August 1974. On that date, the parties met and added the following language to the end of the original lease agreement: "The term of this lease shall be from Jan. 31, 1974 through Jan. 31, 1976." *Id.* at 500, 263 S.E.2d at 605.

In the fall of 1975, defendants indicated their intention to exercise the option to purchase. They arranged to borrow the purchase money, and plaintiffs executed a deed to the property. The parties ultimately disagreed on the sale price, and plaintiffs instituted an action to cancel the deed. In court, plaintiffs argued that the option to purchase had died with the expiration of the term of the original lease and that the

new agreement was not effective to revive the option. *Id.* at 501, 263 S.E.2d at 606. Our Supreme Court noted, "Where the parties have made a separate agreement extending the lease, the agreement must be examined in light of all the circumstances in order to ascertain the meaning of its language, with the guide of established principles for the construction of contracts, and in the light of any reasonable construction placed on it by the parties themselves." *Id.* at 502, 263 S.E.2d at 606-07 (quotation marks and citation omitted). The Court held it was "evident from the conduct of the parties here that they intended to incorporate the option to purchase in their August agreement to extend the lease." *Id.* at 503, 263 S.E.2d at 607.

As in *Vernon* and *Hannah*, Defendants' obligation to offer Plaintiffs the Right of First Refusal to purchase the Property was not applicable to the year-to-year tenancy created by operation of law, and did not remain in effect throughout the period in which Plaintiffs were permitted to hold over after the expiration of the Lease. By written agreement, the Lease expired by its express terms on 31 May 2006, unless timely renewed for a second, seven-year period. Prior to the expiration of the Lease on 31 May 2006, Plaintiffs failed to timely exercise their option to renew the Lease for a second, seven-year period. Additionally, prior to the expiration of the Lease on 31 May 2006, Plaintiffs did not exercise their Right of First Refusal as Defendants did not desire to sell the Property. Moreover, even if timely notice to

renew had been given, the Lease provided, at an absolute maximum, for a period of fourteen years and could not remain in force after 31 May 2013.

As in *Vernon*, upon the expiration of the written Lease, a new tenancy relationship was created by operation of law, and thus, Plaintiffs were tenants from year to year under the applicable terms of the expired lease. *Ball* at *5. Although the Right of First Refusal clause itself does not specifically reference the Lease expiration dates, the Lease by its own terms could not be extended beyond 31 May 2013. Thus, an attempt to enforce the Right of First Refusal in 2015 "would come outside the extended term of the lease." *Vernon*, 50 N.C. App. at 304, 273 S.E.2d at 32.

Moreover, unlike in *Davis*, the parties in this case did not expressly extend the Lease after its expiration and Plaintiffs' attempt to exercise their Right of First Refusal was not made during such extended term, but was made nine years after the Lease's expiration. Furthermore, while the parties' conduct in *Davis* evidenced an intent to incorporate the purchase option into the express extension of the lease agreement, the parties' conduct in entering into the Lease in this case did not. The terms of the Lease specifically did not provide for incorporation of the Right of First Refusal as the renewal terms were to be determined by the parties at least ninety days before the expiration of the first, seven-year lease period. *See Hannah*, 21 N.C. App. at 268, 204 S.E.2d at 214 ("nothing in the language indicate[d] that the parties

intended the purchase obligation to remain in effect throughout whatever holdover or extended period might occur").[6]   Accordingly, Defendants' obligation to offer Plaintiffs the Right of First Refusal contained in the written Lease was no longer in effect when, approximately nine years thereafter, they were called upon to do so.  *See Vernon*, 50 N.C. App. at 304, 273 S.E.2d at 32; *Hannah*, 21 N.C. App. at 268, 204 S.E.2d at 214; *see also Atlantic Product Co. v. Dunn*, 142 N.C. 471, 471, 55 S.E. 299, 300 (1906) (holding that an option to renew a lease or purchase property contained in a written lease can "be exercised only while the lease was in force"); *Smyth v. Berman*, 242 Cal. Rptr. 3d 336 (Cal. App. 5th 2019) (holding that a right of first refusal contained in an expired written lease was not an essential term which carried over into the holdover tenancy); *Bateman v. 317 Rehoboth Ave., LLC*, 878 A.2d 1176, 1185 (Del. Ch. 2005) (holding that a right of first refusal in a lease agreement does not presumptively carry over into a holdover tenancy).

This result is supported by the public policy purposes that statutory and common law holdover tenancies were generally created to address, as explained by Vice Chancellor Strine of the Court of Chancery of Delaware:

> Historically, in our legal tradition, when tenants continued to occupy property beyond the expiration of a lease, landlords were entitled to treat holdover tenants as trespassers, or to summarily evict them.  The doctrine of

---

[6] The dissent's analysis relies upon testimonial evidence contained in a transcript from a prior case, concerning a different issue, before this Court.  That transcript is not part of this record on appeal.  Our "review is solely upon the record on appeal, the verbatim transcript of proceedings . . ., and any other items filed pursuant to this Rule 9."  N.C. R. App. P. 9(a) (2018).

'self-help' arose in the interest of landlords and incoming tenants, allowing landlords to promptly recover possession of leased property from tenants who held it improperly. Not surprisingly, widespread use of 'self-help' remedies led to concerns for the endangerment of persons and property, and breaches of the peace. Statutory [and common law] holdover tenancies emerged as a means of protecting tenants from self-help by landlords who were legally entitled to treat them as trespassers -- that is, to keep people from being dumped out on the street. [Holdover tenancies] attempt to maintain the status quo of a tenant's occupancy and use of leased property for a short period of time during which a landlord can pursue summary eviction. This approach balances the policy objectives of permitting landlords and incoming tenants to recover possession of property in a timely fashion and permitting outgoing tenants to move out in an orderly manner, thereby 'improving the prospects for preserving the public peace.'

*Bateman*, 878 A.2d at 1182-83. "Holdover tenancies are therefore not intended to prolong the existence of legal rights between the landlord and tenant, such as rights of first refusal, that are otherwise unrelated to occupancy and use of property." *Id.* at 1183. Moreover, "[u]nlike an option to purchase property, which an option holder can proactively exercise, a right of first refusal can be exercised only when the holder of property entertains an offer from a third party to purchase the property." *Id.* at 1183-84. Thus, "the extension of a right of first refusal beyond the termination of the contract that conveyed that right makes little sense, given the ease with which the exercise of such a right could be frustrated." *Id.* at 1184.

If a right of first refusal presumptively carried forward into a holdover tenancy, a landlord wishing to nullify that right

could easily do so by evicting the holdover tenant and selling the property one day later, both of which would be within its rights as the landlord of a holdover tenant. This creates an incentive for landlords to evict holdover tenants as soon as possible [], a result at odds with the stability of commercial tenancies. The contrary rule that carries such purchase options forward only if the parties so specify avoids this result, thereby making holdover tenancies more stable.

*Smyth*, 242 Cal. Rptr. 3d at 345 (internal quotation marks and citation omitted).

Plaintiffs cite no authority for their assertion that the Right of First Refusal provided under the Lease continued in effect when Plaintiffs failed to renew the Lease and continued to inhabit the Property as holdover tenants on a year-to-year basis, beyond *Ball's* inclusion of this quote from *Coulter v. Capitol Fin. Co.*:

"Nothing else appearing, when a tenant for a fixed term of one year or more holds over after the expiration of such term, the lessor has an election. He may treat him as a trespasser and bring an action to evict him and to recover reasonable compensation for the use of the property, or he may recognize him as still a tenant, *having the same rights and duties as under the original lease*, except that the tenancy is one from year to year and is terminable by either party upon giving to the other 30 days' notice directed to the end of any year of such new tenancy."

*Ball* at *4-5 (quoting *Coulter*, 266 N.C. at 217, 146 S.E.2d at 100) (emphasis added).

However, *Coulter* relied on *Kearney v. Hare*, cited above, which more precisely explains that when a lease for a fixed term of a year, or more, expires, a tenant holds over, and "the lessor elects to treat him as a tenant, a new tenancy relationship is created as of the end of the former term." *Kearney*, 265 N.C. at 573, 144 S.E.2d at

638. "This is, by presumption of law, a tenancy from year to year, the terms of which are the same as those of the former lease in so far as they are applicable . . . ." *Id.*

To be sure, there is precedent from several states holding that rights of first refusal (or other purchase options) presumptively carry forward into holdover tenancies. *See Smyth*, 242 Cal. Rptr. 3d at 345 (listing cases discussing presumptive rights and options in holdover tenancies). However, the majority rule is the rule supported by our case law and general policy that we apply today. *See id.* The Right of First Refusal in this case was not "applicable" to the year-to-year tenancy created by operation of law after the expiration of the Lease.

## IV. Conclusion

For the reasons stated above, the Right of First Refusal in the written Lease was not a term applicable to the year-to-year tenancy created by operation of law upon the expiration of the written Lease. Accordingly, Plaintiffs were not entitled to be given the Right of First Refusal to purchase the Property prior to Sylva's sale of the Property to the Balls. Because of our holding, we need not reach Plaintiffs' argument that the Right of First Refusal did not violate the rule against perpetuities. As there was no genuine issue of material fact and Defendants were entitled to judgment as a matter of law, the trial court's order granting summary judgment in favor of Defendants is affirmed.

AFFIRMED.

Judge ZACHARY concurs.

Judge TYSON dissents by separate opinion.

TYSON, Judge, dissenting.

The majority's opinion erroneously concludes as a matter of law the tenant's right of first refusal to purchase the property, included in the original lease between Plaintiffs and Defendant Sylva Supply Co. Inc., is not a term or provision that is applicable to or enforceable by Plaintiffs' during their year-to-year tenancy. The trial court's grant of summary judgment in favor of Defendants is error. Whether the Plaintiffs' right of first refusal in this case applies to the year-to-year tenancy or is a wholly independent, stand-alone agreement between the parties, rests upon the intent of the parties and raises genuine issues of material fact. Summary judgment is inappropriate in this circumstance. I vote to reverse the trial court's order and remand for a trial on the merits. I respectfully dissent.

## I. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). "[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 447, 579 S.E.2d 505, 507 (2003) (citation omitted).

> A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that

the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.

*Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (citations and internal quotation marks omitted). Defendants cannot meet this standard.

## II. Right of First Refusal

The parties are operating under a year-to-year tenancy, pursuant to this Court's holding in *Ball v. Cogdill*, __ N.C. App. __, 808 S.E.2d 617, 2017 N.C. App. LEXIS 1074 (2017) (unpublished). Our Supreme Court has stated that when a landlord continues to accept rent from a tenant after the express term of the lease expires, a tenancy from year-to-year is created, "the terms of which are the same as those of the former lease in so far as they are applicable, in the absence of a new contract between them or of other circumstances rebutting such presumption." *Kearney v. Hare*, 265 N.C. 570, 573, 144 S.E.2d 636, 638 (1965).

The majority's opinion concludes a right of first refusal is not an "applicable" term of the lease as a matter of law to affirm summary judgment. Based upon controlling North Carolina contract law and cases involving option and first refusal contracts, the intent of the parties is a question of fact and summary judgment is inappropriate in this case. On the merits and as a question of law, a review of

jurisdictions which have ruled on this issue supports a conclusion that a right of first refusal survives and applies in year-to-year tenancies.

## *A. North Carolina Law*

A right of first refusal is a preemptive right, which "creates in its holder only the right to buy land before other parties if the seller decides to convey it." *Smith v. Mitchell*, 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980). Though distinguishable from a unilateral option contract, our Supreme Court has held review of preemptive rights and options can be analogous. *Id.* at 63, 269 S.E.2d at 612 ("Just as the commercial device of the option is upheld, if it is reasonable, so too the provisions of a preemptive right should be upheld if reasonable, particularly here where the preemptive right appears to be part of a commercial exchange, bargained for at arm's length."). The right of first refusal can be an express, unitary agreement or can be contained within a lease, option, covenant, or other agreement.

"[T]he same principles of construction applicable to all contracts apply to option contracts." *Lagies v. Myers*, 142 N.C. App. 239, 247, 542 S.E.2d 336, 341 (2001). If the terms of the contract are clear, the contract "must be enforced as it is written, and the court may not disregard the plainly expressed meaning of its language." *Catawba Athletics, Inc. v. Newton Car Wash, Inc.*, 53 N.C. App. 708, 712, 281 S.E.2d 676, 679 (1981). "Where the language of a contract is ambiguous, courts consider

other relevant and material extrinsic evidence to ascertain the parties' intent[.]" *Lagies*, 142 N.C. App. at 247, 542 S.E.2d at 342.

Ambiguous terms are conditions or provisions that are "fairly and reasonably susceptible to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). In reviewing and construing contracts, ambiguous terms are to be "construed against the drafting party." *Lagies,* 142 N.C. App. at 248, 542 S.E.2d at 342.

The majority's opinion erroneously purports to base the outcome of this case on *Vernon v. Kennedy*, 50 N.C. App. 302, 273 S.E.2d 31 (1981), and *Hannah v. Hannah*, 21 N.C. App. 265, 204 S.E.2d 212 (1974). Neither of those cases are applicable to the facts before us nor are controlling to the outcome of this case.

*Vernon* construed an option to purchase, as opposed to a right of first refusal, whose express and explicit terms stated the right could not be construed to survive expiration of the lease term or be "applicable" to the subsequent year-to-year tenancy:

> The option term in paragraph 7 of the lease cannot be construed as "applicable" to the tenancy from year to year *for the reason that by its own terms, paragraph 7 is limited to 'the term of this lease or the extended period thereof.'* Since the lease, again by its own terms, could not be extended beyond 30 April 1973, an attempt to exercise the option in 1979 would come outside the extended term of the lease.

*Vernon*, 50 N.C. App. at 304, 273 S.E.2d 32 (emphasis supplied).

4

The issue presented in *Hannah* was similar. A lease of a filling station included the provision: "If at the *end of five years*, [the tenant] should want possession of said filling station, he would purchase all stock and equipment at 20% discount, and not over 2 years bills." *Hannah*, 21 N.C. App. at 267, 204 S.E.2d at 214 (internal quotation marks omitted) (emphasis supplied). The tenant remained in possession of the premises for over *fifteen years after* the lease expired. *Id.* at 267, 204 S.E.2d at 214. This Court held that the express term "at the end of five years" could not be construed to include the end of any renewal or extension, and the obligation to purchase was extinguished. *Id.* at 268, 204 S.E.2d at 214.

Unlike in *Vernon* and *Hannah*, neither the right of first refusal paragraph in Plaintiffs' lease nor the "Memorandum of Lease and Right of First Refusal" ("Memorandum") contain any express limitation restricting the right to a specific term or event. Paragraph XI states that if the landlord desires to sell the property "it shall offer" the option to purchase to the tenant. The majority's opinion asserts the terms of the lease restrict the right of first refusal to the dates of the lease and one additional seven year extension. Without express language limiting the applicability of the right of first refusal upon the expiration of the lease as in *Vernon* or to a specific time as in *Hannah*, the applicability of the right is, at minimum, ambiguous.

The Memorandum states:

> The undersigned hereby declare that they have entered into a Lease *and* Right of First Refusal Agreement dated May 19, 1999, which contains a right of first refusal conveyed by Sylva Supply Company, Inc. to Crystal Cogdill Jones, upon the property located at 582 West Main Street, Sylva, North Carolina, known as the Sylva Supply Company Building.
>
> The undersigned further state that the written instrument of lease *and* right of first refusal and any amendments thereto will be kept for safekeeping at the office of Sylva Supply Company, Inc. . . .

(Emphasis supplied). This written Memorandum is express in its terms and meets all the requirements of the Statute of Frauds for "the party to be charged." N.C. Gen. Stat. § 22-2 (2017). At minimum, genuine issues of material fact exist on the intent of the parties of the provisions and Memorandum.

The majority's opinion purports to distinguish our Supreme Court's holding in *Davis v. McRee*, 299 N.C. 498, 263 S.E.2d 604 (1980), though the facts of that case are clearly more applicable here than either *Vernon* or *Hannah*. The majority opinion's analysis hinges upon the parties in *Davis* having retroactively extended their lease beyond the original term after a holdover, and attempted to exercise their option to purchase during that retroactively extended renewal term. However, the terms of the lease in *Davis* were deemed to be ambiguous, and our Supreme Court's analysis of how to construe ambiguous option terms is instructive and controlling here:

> *[T]he ultimate test in construing any written agreement is to ascertain the parties' intentions in light of all the relevant*

> *circumstances and not merely in terms of the actual language used.*
>
>  . . .
>
> The parties are presumed to know the intent and meaning of their contract better than strangers, and where the parties have placed a particular interpretation on their contract after executing it, the courts ordinarily will not ignore that construction which the parties themselves have given it prior to the differences between them.

*Davis*, 299 N.C. at 502, 263 S.E.2d at 606-07 (emphasis supplied).

Our Supreme Court in *Davis* looked to the actions of the parties because the Court deemed the language and applicability of the lease extension to be ambiguous. *Id.* at 502-03, 263 S.E.2d 607. The subsequent actions of both parties indicated their intention to abide by and extend the option: the defendants exercised their option and the plaintiffs had the deed of purchase drawn up. *Id.*

Here, the terms of the lease and the signed and recorded Memorandum, viewed in the light most favorable to Plaintiffs, are ambiguous, as there is no expressed limitation on or termination of the right of first refusal. We also take judicial notice of subsequent behavior by parties, which also suggests the recorded right of first refusal survived the expiration of the lease, with or without the year-to-year tenancy, and shows ambiguity. *See* N.C. Gen. Stat. § 8C-1, Rule 201 (2017) (a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" can be judicially noticed "at any stage of the proceeding"); *see also West v. Reddick, Inc.*, 302 N.C. 201, 202-03, 274 S.E.2d 221,

223 (1981) ("This Court has long recognized that a court may take judicial notice of its own records in another interrelated proceeding where the parties are the same, the issues are the same and the interrelated case is referred to in the case under consideration . . . . on any occasion where the existence of a particular fact is important, as in determining the sufficiency of a pleading").

As noted in the record when this case was previously before this Court, Sylva Supply Company, Inc., provided Ms. Cogdill with an opportunity to purchase the property during the year-to-year tenancy in 2012, though the transaction did not close. This proffer indicates the owner/landlord's recognition of the continued viability and its intent to continue honoring the tenant's express right of first refusal, either as stated in the lease or the recorded Memorandum. However, the 2015 sale of the property that is before us, closed without seller-landlord offering Plaintiffs the first refusal to exercise their right to purchase the property, which injects ambiguity into the intent and actions of the parties.

Further, W. Paul Holt, Jr., the attorney who drafted the original lease, amendment, and recorded Memorandum, and maintained possession of the lease in his office, was also the closing attorney and drafted the 2015 deed for the sale of the property to the Balls. This deed warrants the premises were free from all encumbrances on 7 May 2016. Not only are ambiguous terms construed against the drafter, *see Lagies,* 142 N.C. App. at 248, 542 S.E.2d at 342, the lease is also construed

8

against the original drafter's successor-in-interest. *See Mosley & Mosley Builders, Inc. v. Landin, Ltd.*, 97 N.C. App. 511, 525, 389 S.E.2d 576, 584 (1990).

The ambiguity present in the language of the contract, in the express language contained in the Memorandum, and in the subsequent actions of the parties presents and shows genuine issues of material fact exist, which precludes disposition of this case by summary judgment. *See Pacheco*, 157 N.C. App. at 447, 579 S.E.2d at 507. The trial court's order is properly reversed.

## *B. Other Jurisdictions*

The genuine issues of material facts of the parties' intent existing in this case do not require a determination on whether rights of first refusal are "applicable" terms under a year-to-year lease. The express terms and provisions of the signed and recorded Memorandum preclude summary judgment for Defendants. I also disagree with the majority opinion's analysis of how North Carolina law determines this issue.

The majority's opinion cites a purported "majority" rule, which holds the right of first refusal presumptively does not carry forward, as the rule that is supported by North Carolina case law and general public policy. A closer reading of states which have decided this issue indicates North Carolina does not agree with nor follow their decisions.

The majority's opinion cites *Smyth v. Berman*, 242 Cal. Rptr. 3d 336 (Ct. App. 2 Dist. 2019), which provides a survey of states that have ruled on the issue of

whether rights of first refusal carry forward into holdover tenancies after the lease term expires. *Id.* at 345-46. The opinion in *Smyth* characterizes North Carolina as part of the "majority" rule, based upon the ruling in *Vernon*. As discussed above and in other jurisdictions, *Vernon* is distinguishable "based on . . . [the court's] interpretation of the particular [and express] lease terms presented." *Kutkowski v. Princeville Prince Golf Course, LLC*, 289 P.3d 980, 992 (Haw. Ct. App. 2012), *rev'd on other grounds*, 300 P.3d 1009 (Haw. 2013); *see also Peter-Michael, Inc. v. Sea Shell Assocs.*, 709 A.2d 558, 563 & n.6 (Conn. 1998).

*Kutkowski* held that "[w]hen a lease for a specified term is not extended or renewed, and the lessee holds over after the expiration of the lease, *unless otherwise agreed*, the law implies that the parties' rights and obligations with respect to that holdover tenancy continue as set forth in the expired lease agreement." *Id.* at 994 (emphasis supplied). This principle "states the common law followed in Hawai'i and most every other jurisdiction surveyed, and sets forth the common understanding and rules applicable to the dealings of landlord and tenant after the termination of their express agreement, but effectuates, as the law must, the parties' right to agree to the contrary." *Id.* This analysis and conclusion follows the common law of our state. *See Kearney*, 265 N.C. at 573, 144 S.E.2d at 638; *see also Coulter v. Capitol Fin. Co.*, 266 N.C. 214, 217, 146 S.E.2d 97, 100 (1966).

The majority's opinion from this "error correcting court" cites *Bateman v. 317 Rehoboth Ave., LLC*, 878 A.2d 1176, 1183 (Del. Ch. 2005), to explain the purported "public policy" reasons behind its holding. The Chancery Court of Delaware noted that

> Statutory holdover tenancies emerged as a means of protecting tenants from self-help by landlords who were legally entitled to treat them as trespassers – that is, to keep people from being dumped out on the street. Statutes such as § 5108 attempt to maintain the status quo of a tenant's occupancy and use of leased property for a short period of time during which a landlord can pursue summary eviction. This approach balances the policy objectives of permitting landlords and incoming tenants to recover possession of property in a timely fashion and permitting outgoing tenants to move out in an orderly manner, thereby "improving the prospects for preserving the public peace." Holdover tenancies are therefore not intended to prolong the existence of legal rights between the landlord and tenant, such as rights of first refusal, that are otherwise unrelated to occupancy and use of property.

*Id.* at 1183. For lease terms of a year or more in Delaware, the holdover "term shall be month-to-month, and all other terms of the rental agreement shall continue in full force and effect." Del. Code Ann. tit. 25, § 5108 (2009).

Similarly, California courts also declined to presumptively extend the right of first refusal into the holdover period in order to make "holdover tenancies more stable." *Smyth*, 242 Cal. Rptr. 3d at 345. Like Delaware, California prescribes an express month-to-month term for a holdover period, generally. Cal. Civ. Code § 1945 (West 2010).

Delaware and California's rule, and thus their "public policy" support for this rule, is inapplicable to North Carolina. As stated by our Supreme Court, the "common understanding and rules applicable to the dealings of landlord and tenant after the termination" of a lease agreement in North Carolina is:

> Nothing else appearing, when a tenant for a fixed term of one year or more holds over after the expiration of such term, the lessor has an election. He may treat him as a trespasser and bring an action to evict him and to recover reasonable compensation for the use of the property, *or he may recognize him as still a tenant, having the same rights and duties as under the original lease, except that the tenancy is one from year to year* and is terminable by either party upon giving to the other 30 days' notice directed to the end of any year of such new tenancy.
>
> The parties to the lease may, of course, agree upon a different relationship.

*Coulter*, 266 N.C. at 217, 146 S.E.2d at 100 (citations omitted) (emphasis supplied). The parties can also reach an express, independent agreement irrespective of the lease for a right of first refusal as is contained in the signed and recorded Memorandum. Further, in *Spinks v. Taylor*, our Supreme Court held that a landlord maintains the right of peaceful self-help to evict a holdover tenant and to regain possession of the premises, at least in a non-residential lease. *Spinks v. Taylor*, 303 N.C. 256, 262, 278 S.E.2d 501, 504 (1981). The lease before us is a commercial lease between parties of relatively equal bargaining power.

In deciding the applicability of rights of first refusal to holdover tenancies, if the agreement before us is wholly dependent upon the lease, North Carolina should

consider persuasive authority from states with similar holdover tenancy structures. Wisconsin enacted a statute which "gives the landlord the election to treat the holdover tenant as a tenant from year to year under the lease and gives both the landlord and the tenant the right to terminate such lease at the end of any year upon 30-days-written notice." *Last v. Puehler*, 120 N.W.2d 120, 122 (Wis. 1963). In its consideration of rights of first refusal, the Wisconsin Supreme Court stated:

> We consider an option to purchase or right of a first refusal to be an integral part of the lease and one of its terms within the meaning of this section. It is not an uncommon practice to insert an option to purchase or a right of first refusal in a lease. In many cases no lease would be entered into by the tenant without such protection.
>
> The interpretation commanded by the language of this section is both logical and fair. Upon the expiration of the written lease the tenant has the duty to surrender the property. If he holds over, he runs the risk of being considered a holdover tenant with all the burdens of the lease. The pinpointed question in this case is whether he also runs the risk, if it is one, of acquiring all the benefits which the lease might provide. Conversely, the landlord may eject the tenant, make a new agreement mutually satisfactory to him and the tenant, or elect under sec. 234.07, Stats. By such an election the landlord receives the benefits of the lease from year to year but likewise incurs its obligations and the tenant is then bound from year to year both as to the advantages and disadvantages to him of the lease. It is logical to believe the legislature intended by the operation of this section to *leave the parties as they were under the original lease after the landlord elected to come under the section. We cannot construe the statute to mean that by the election of the landlord a common law tenancy is created free and clear from some terms of the lease but not from others.*

13

*Id.* at 122-23 (emphasis supplied).

This analysis and logic presumes a right of first refusal or other option to purchase carries forward into a holdover tenancy unless a contrary intent appears. Unlike in both *Vernon* and *Hannah*, the lease in this case contained no language indicating the right of first refusal did not carry into the year-to-year tenancy. The applicable law to these facts should be applied under this analysis.

### III. Conclusion

The Defendants failed to meet their burden to be awarded summary judgment, as factual questions of intent of the parties remain. I disagree with the majority opinion's holding and with its application of policies from states with disparate holdover tenancy rules. Also, the recorded Memorandum contains an express right of first refusal agreement between the parties, which is not tied to nor dependent upon the lease.

Genuine issues of material facts exist of the parties intent and actions. I vote to reverse summary judgment and remand to the trial court for a hearing on the merits. I respectfully dissent.