TYSON, Judge, dissenting.
The majority's opinion erroneously concludes as a matter of law the tenant's right of first refusal to purchase the property, included in the original lease between Plaintiffs and Defendant Sylva Supply Co. Inc., is not a term or provision that is applicable to or enforceable by Plaintiffs' during their year-to-year tenancy. The trial court's grant of summary judgment in favor of Defendants is error. Whether the Plaintiffs' right of first refusal in this case applies to the year-to-year tenancy or is a wholly independent, stand-alone agreement between the parties, rests upon the intent of the parties and raises genuine issues of material fact. Summary judgment is inappropriate in this circumstance. I vote to reverse the trial court's order and remand for a trial on the merits. I respectfully dissent.
I. Standard of Review
Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2017). "[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." Pacheco v. Rogers & Breece, Inc. , 157 N.C. App. 445, 447, 579 S.E.2d 505, 507 (2003) (citation omitted).
*141 A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense. Summary judgment is not appropriate where matters of credibility and determining the weight of the evidence exist.
Draughon v. Harnett Cty. Bd. of Educ. , 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (citations and internal quotation marks omitted). Defendants cannot meet this standard.
II. Right of First Refusal
The parties are operating under a year-to-year tenancy, pursuant to this Court's holding in Ball v. Cogdill , --- N.C. App. ----, 808 S.E.2d 617, 2017 N.C. App. LEXIS 1074 (2017) (unpublished). Our Supreme Court has stated that when a landlord continues to accept rent from a tenant after the express term of the lease expires, a tenancy from year-to-year is created, "the terms of which are the same as those of the former lease in so far as they are applicable, in the absence of a new contract between them or of other circumstances rebutting such presumption." Kearney v. Hare , 265 N.C. 570, 573, 144 S.E.2d 636, 638 (1965).
The majority's opinion concludes a right of first refusal is not an "applicable" term of the lease as a matter of law to affirm summary judgment. Based upon controlling North Carolina contract law and cases involving option and first refusal contracts, the intent of the parties is a question of fact and summary judgment is inappropriate in this case. On the merits and as a question of law, a review of jurisdictions which have ruled on this issue supports a conclusion that a right of first refusal survives and applies in year-to-year tenancies.
*520 A. North Carolina Law
A right of first refusal is a preemptive right, which "creates in its holder only the right to buy land before other parties if the seller decides to convey it." Smith v. Mitchell , 301 N.C. 58, 61, 269 S.E.2d 608, 610-11 (1980). Though distinguishable from a unilateral option contract, our Supreme Court has held review of preemptive rights and options can be analogous. Id. at 63, 269 S.E.2d at 612 ("Just as the commercial device of the option is upheld, if it is reasonable, so too the provisions of a preemptive right should be upheld if reasonable, particularly here where *142 the preemptive right appears to be part of a commercial exchange, bargained for at arm's length."). The right of first refusal can be an express, unitary agreement or can be contained within a lease, option, covenant, or other agreement.
"[T]he same principles of construction applicable to all contracts apply to option contracts." Lagies v. Myers , 142 N.C. App. 239, 247, 542 S.E.2d 336, 341 (2001). If the terms of the contract are clear, the contract "must be enforced as it is written, and the court may not disregard the plainly expressed meaning of its language." Catawba Athletics, Inc. v. Newton Car Wash, Inc. , 53 N.C. App. 708, 712, 281 S.E.2d 676, 679 (1981). "Where the language of a contract is ambiguous, courts consider other relevant and material extrinsic evidence to ascertain the parties' intent[.]" Lagies , 142 N.C. App. at 247, 542 S.E.2d at 342.
Ambiguous terms are conditions or provisions that are "fairly and reasonably susceptible to either of the constructions asserted by the parties." Glover v. First Union National Bank , 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993). In reviewing and construing contracts, ambiguous terms are to be "construed against the drafting party." Lagies, 142 N.C. App. at 248, 542 S.E.2d at 342.
The majority's opinion erroneously purports to base the outcome of this case on Vernon v. Kennedy , 50 N.C. App. 302, 273 S.E.2d 31 (1981), and Hannah v. Hannah , 21 N.C. App. 265, 204 S.E.2d 212 (1974). Neither of those cases are applicable to the facts before us nor are controlling to the outcome of this case.
Vernon construed an option to purchase, as opposed to a right of first refusal, whose express and explicit terms stated the right could not be construed to survive expiration of the lease term or be "applicable" to the subsequent year-to-year tenancy:
The option term in paragraph 7 of the lease cannot be construed as "applicable" to the tenancy from year to year for the reason that by its own terms, paragraph 7 is limited to 'the term of this lease or the extended period thereof. ' Since the lease, again by its own terms, could not be extended beyond 30 April 1973, an attempt to exercise the option in 1979 would come outside the extended term of the lease.
Vernon , 50 N.C. App. at 304, 273 S.E.2d at 32 (emphasis supplied).
The issue presented in Hannah was similar. A lease of a filling station included the provision: "If at the end of five years , [the tenant] should *143 want possession of said filling station, he would purchase all stock and equipment at 20% discount, and not over 2 years bills." Hannah , 21 N.C. App. at 267, 204 S.E.2d at 214 (internal quotation marks omitted) (emphasis supplied). The tenant remained in possession of the premises for over fifteen years after the lease expired. Id. at 267, 204 S.E.2d at 214. This Court held that the express term "at the end of five years" could not be construed to include the end of any renewal or extension, and the obligation to purchase was extinguished. Id. at 268, 204 S.E.2d at 214.
Unlike in Vernon and Hannah , neither the right of first refusal paragraph in Plaintiffs' lease nor the "Memorandum of Lease and Right of First Refusal" ("Memorandum") contain any express limitation restricting the right to a specific term or event. Paragraph XI states that if the landlord desires to sell the property "it shall offer" the option to purchase to the tenant. The majority's opinion asserts the terms of the lease restrict the right of first refusal to the dates of the lease and one additional seven year extension. Without express language limiting the applicability of the right of first refusal upon the expiration of the lease as in Vernon or to a *521 specific time as in Hannah , the applicability of the right is, at minimum, ambiguous.
The Memorandum states:
The undersigned hereby declare that they have entered into a Lease and Right of First Refusal Agreement dated May 19, 1999, which contains a right of first refusal conveyed by Sylva Supply Company, Inc. to Crystal Cogdill Jones, upon the property located at 582 West Main Street, Sylva, North Carolina, known as the Sylva Supply Company Building.
The undersigned further state that the written instrument of lease and right of first refusal and any amendments thereto will be kept for safekeeping at the office of Sylva Supply Company, Inc. ...
(Emphasis supplied). This written Memorandum is express in its terms and meets all the requirements of the Statute of Frauds for "the party to be charged." N.C. Gen. Stat. § 22-2 (2017). At minimum, genuine issues of material fact exist on the intent of the parties of the provisions and Memorandum.
The majority's opinion purports to distinguish our Supreme Court's holding in Davis v. McRee , 299 N.C. 498, 263 S.E.2d 604 (1980), though *144 the facts of that case are clearly more applicable here than either Vernon or Hannah . The majority opinion's analysis hinges upon the parties in Davis having retroactively extended their lease beyond the original term after a holdover, and attempted to exercise their option to purchase during that retroactively extended renewal term. However, the terms of the lease in Davis were deemed to be ambiguous, and our Supreme Court's analysis of how to construe ambiguous option terms is instructive and controlling here:
[T]he ultimate test in construing any written agreement is to ascertain the parties' intentions in light of all the relevant circumstances and not merely in terms of the actual language used.
...
The parties are presumed to know the intent and meaning of their contract better than strangers, and where the parties have placed a particular interpretation on their contract after executing it, the courts ordinarily will not ignore that construction which the parties themselves have given it prior to the differences between them.
Davis , 299 N.C. at 502, 263 S.E.2d at 606-07 (emphasis supplied).
Our Supreme Court in Davis looked to the actions of the parties because the Court deemed the language and applicability of the lease extension to be ambiguous. Id. at 502-03, 263 S.E.2d at 607. The subsequent actions of both parties indicated their intention to abide by and extend the option: the defendants exercised their option and the plaintiffs had the deed of purchase drawn up. Id.
Here, the terms of the lease and the signed and recorded Memorandum, viewed in the light most favorable to Plaintiffs, are ambiguous, as there is no expressed limitation on or termination of the right of first refusal. We also take judicial notice of subsequent behavior by parties, which also suggests the recorded right of first refusal survived the expiration of the lease, with or without the year-to-year tenancy, and shows ambiguity. See N.C. Gen. Stat. § 8C-1, Rule 201 (2017) (a fact that is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" can be judicially noticed "at any stage of the proceeding"); see also West v. Reddick, Inc. , 302 N.C. 201, 202-03, 274 S.E.2d 221, 223 (1981) ("This Court has long recognized that a court may take judicial notice of its own records in another interrelated proceeding where the parties are the same, the *145 issues are the same and the interrelated case is referred to in the case under consideration .... on any occasion where the existence of a particular fact is important, as in determining the sufficiency of a pleading").
As noted in the record when this case was previously before this Court, Sylva Supply Company, Inc., provided Ms. Cogdill with an opportunity to purchase the property during the year-to-year tenancy in 2012, though the transaction did not close. This proffer indicates the owner/landlord's recognition of the continued viability and its intent to continue honoring the tenant's express right of first refusal, either as stated in the lease or the recorded Memorandum. However, the 2015 *522 sale of the property that is before us, closed without seller-landlord offering Plaintiffs the first refusal to exercise their right to purchase the property, which injects ambiguity into the intent and actions of the parties.
Further, W. Paul Holt, Jr., the attorney who drafted the original lease, amendment, and recorded Memorandum, and maintained possession of the lease in his office, was also the closing attorney and drafted the 2015 deed for the sale of the property to the Balls. This deed warrants the premises were free from all encumbrances on 7 May 2016. Not only are ambiguous terms construed against the drafter, see Lagies, 142 N.C. App. at 248, 542 S.E.2d at 342, the lease is also construed against the original drafter's successor-in-interest. See Mosley & Mosley Builders, Inc. v. Landin, Ltd. , 97 N.C. App. 511, 525, 389 S.E.2d 576, 584 (1990).
The ambiguity present in the language of the contract, in the express language contained in the Memorandum, and in the subsequent actions of the parties presents and shows genuine issues of material fact exist, which precludes disposition of this case by summary judgment. See Pacheco , 157 N.C. App. at 447, 579 S.E.2d at 507. The trial court's order is properly reversed.
B. Other Jurisdictions
The genuine issues of material facts of the parties' intent existing in this case do not require a determination on whether rights of first refusal are "applicable" terms under a year-to-year lease. The express terms and provisions of the signed and recorded Memorandum preclude summary judgment for Defendants. I also disagree with the majority opinion's analysis of how North Carolina law determines this issue.
The majority's opinion cites a purported "majority" rule, which holds the right of first refusal presumptively does not carry forward, as the rule that is supported by North Carolina case law and general public policy. A closer reading of states which have decided this issue indicates North Carolina does not agree with nor follow their decisions.
*146 The majority's opinion cites Smyth v. Berman , 31 Cal.App.5th 183, 242 Cal.Rptr.3d 336 (2019), which provides a survey of states that have ruled on the issue of whether rights of first refusal carry forward into holdover tenancies after the lease term expires. Id. at 345-46. The opinion in Smyth characterizes North Carolina as part of the "majority" rule, based upon the ruling in Vernon . As discussed above and in other jurisdictions, Vernon is distinguishable "based on ... [the court's] interpretation of the particular [and express] lease terms presented." Kutkowski v. Princeville Prince Golf Course, LLC , 128 Hawai'i 344, 289 P.3d 980, 992 (2012), rev'd on other grounds , 129 Hawai'i 350, 300 P.3d 1009 (2013) ; see also Peter-Michael, Inc. v. Sea Shell Assocs. , 244 Conn. 269, 709 A.2d 558, 563 & n.6 (1998).
Kutkowski held that "[w]hen a lease for a specified term is not extended or renewed, and the lessee holds over after the expiration of the lease, unless otherwise agreed , the law implies that the parties' rights and obligations with respect to that holdover tenancy continue as set forth in the expired lease agreement." Id. at 994 (emphasis supplied). This principle "states the common law followed in Hawai'i and most every other jurisdiction surveyed, and sets forth the common understanding and rules applicable to the dealings of landlord and tenant after the termination of their express agreement, but effectuates, as the law must, the parties' right to agree to the contrary." Id. This analysis and conclusion follows the common law of our state. See Kearney , 265 N.C. at 573, 144 S.E.2d at 638 ; see also Coulter v. Capitol Fin. Co. , 266 N.C. 214, 217, 146 S.E.2d 97, 100 (1966).
The majority's opinion from this "error correcting court" cites Bateman v. 317 Rehoboth Ave., LLC , 878 A.2d 1176, 1183 (Del. Ch. 2005), to explain the purported "public policy" reasons behind its holding. The Chancery Court of Delaware noted that
Statutory holdover tenancies emerged as a means of protecting tenants from self-help by landlords who were legally entitled to treat them as trespassers - that is, to keep people from being dumped out on the street. Statutes such as § 5108 attempt to maintain the status quo of a tenant's occupancy and use of leased property for a short period of time during which a landlord *523 can pursue summary eviction. This approach balances the policy objectives of permitting landlords and incoming tenants to recover possession of property in a timely fashion and permitting outgoing tenants to move out in an orderly manner, thereby "improving the prospects for preserving the public peace." Holdover tenancies are therefore not *147 intended to prolong the existence of legal rights between the landlord and tenant, such as rights of first refusal, that are otherwise unrelated to occupancy and use of property.
Id. at 1183. For lease terms of a year or more in Delaware, the holdover "term shall be month-to-month, and all other terms of the rental agreement shall continue in full force and effect." Del. Code Ann. tit. 25, § 5108 (2009).
Similarly, California courts also declined to presumptively extend the right of first refusal into the holdover period in order to make "holdover tenancies more stable." Smyth , 242 Cal.Rptr.3d at 345. Like Delaware, California prescribes an express month-to-month term for a holdover period, generally. Cal. Civ. Code § 1945 (West 2010).
Delaware and California's rule, and thus their "public policy" support for this rule, is inapplicable to North Carolina. As stated by our Supreme Court, the "common understanding and rules applicable to the dealings of landlord and tenant after the termination" of a lease agreement in North Carolina is:
Nothing else appearing, when a tenant for a fixed term of one year or more holds over after the expiration of such term, the lessor has an election. He may treat him as a trespasser and bring an action to evict him and to recover reasonable compensation for the use of the property, or he may recognize him as still a tenant, having the same rights and duties as under the original lease, except that the tenancy is one from year to year and is terminable by either party upon giving to the other 30 days' notice directed to the end of any year of such new tenancy.
The parties to the lease may, of course, agree upon a different relationship.
Coulter , 266 N.C. at 217, 146 S.E.2d at 100 (citations omitted) (emphasis supplied). The parties can also reach an express, independent agreement irrespective of the lease for a right of first refusal as is contained in the signed and recorded Memorandum. Further, in Spinks v. Taylor , our Supreme Court held that a landlord maintains the right of peaceful self-help to evict a holdover tenant and to regain possession of the premises, at least in a non-residential lease. Spinks v. Taylor , 303 N.C. 256, 262, 278 S.E.2d 501, 504 (1981). The lease before us is a commercial lease between parties of relatively equal bargaining power.
*148 In deciding the applicability of rights of first refusal to holdover tenancies, if the agreement before us is wholly dependent upon the lease, North Carolina should consider persuasive authority from states with similar holdover tenancy structures. Wisconsin enacted a statute which "gives the landlord the election to treat the holdover tenant as a tenant from year to year under the lease and gives both the landlord and the tenant the right to terminate such lease at the end of any year upon 30-days-written notice." Last v. Puehler , 19 Wis.2d 291, 120 N.W.2d 120, 122 (1963). In its consideration of rights of first refusal, the Wisconsin Supreme Court stated:
We consider an option to purchase or right of a first refusal to be an integral part of the lease and one of its terms within the meaning of this section. It is not an uncommon practice to insert an option to purchase or a right of first refusal in a lease. In many cases no lease would be entered into by the tenant without such protection.
The interpretation commanded by the language of this section is both logical and fair. Upon the expiration of the written lease the tenant has the duty to surrender the property. If he holds over, he runs the risk of being considered a holdover tenant with all the burdens of the lease. The pinpointed question in this case is whether he also runs the risk, if it is one, of acquiring all the benefits which the lease might provide. Conversely, the landlord may eject the tenant, make a new agreement mutually satisfactory to him and the tenant, or elect under sec. 234.07, Stats. By such an election the landlord receives the *524 benefits of the lease from year to year but likewise incurs its obligations and the tenant is then bound from year to year both as to the advantages and disadvantages to him of the lease. It is logical to believe the legislature intended by the operation of this section to leave the parties as they were under the original lease after the landlord elected to come under the section. We cannot construe the statute to mean that by the election of the landlord a common law tenancy is created free and clear from some terms of the lease but not from others.
Id. at 122-23 (emphasis supplied).
This analysis and logic presumes a right of first refusal or other option to purchase carries forward into a holdover tenancy unless a *149 contrary intent appears. Unlike in both Vernon and Hannah , the lease in this case contained no language indicating the right of first refusal did not carry into the year-to-year tenancy. The applicable law to these facts should be applied under this analysis.
III. Conclusion
The Defendants failed to meet their burden to be awarded summary judgment, as factual questions of intent of the parties remain. I disagree with the majority opinion's holding and with its application of policies from states with disparate holdover tenancy rules. Also, the recorded Memorandum contains an express right of first refusal agreement between the parties, which is not tied to nor dependent upon the lease.
Genuine issues of material facts exist of the parties intent and actions. I vote to reverse summary judgment and remand to the trial court for a hearing on the merits. I respectfully dissent.